AMERICAN LIFE ASSOCIATION *v.* VADEN.

Opinion delivered April 28, 1924.

1. INSURANCE—NONPAYMENT OF PREMIUM—EXTENSION OF TIME.— Where a first premium note, given under a policy which, by its terms, became void upon nonpayment of any premium note when due, became due on October 20, 1918, and was unpaid, the policy became void, unless the time for payment was extended prior to insured's death on October 28.

2. INSURANCE—EXTENSION OF TIME FOR PAYING PREMIUM—EVIDENCE. —In an action on a life policy, where the defense was that the policy was forfeited by reason of nonpayment of the premium note, evidence *held* to justify submission of the issue whether time for payment of such note had been extended before insured's death.

3   INSURANCE—WAIVER OF FORFEITURE.—Furnishing by insurer of
blanks for making proof of death, and correspondence between
insurer and beneficiary with reference thereto, *held* insufficient
as evidence of a waiver by insurer of a forfeiture of the policy
for nonpayment of the premium, where the blanks recited that
the furnishing of them should not be an acknowledgment of
liability of the insurer.

4.   INSURANCE—WAIVER OF FORFEITURE—EVIDENCE.—Evidence *held* to
justify submission of the issue whether insurer, after having
knowledge that a premium note had not been paid at the time of
insured's death, did not, by its affirmative conduct for several
months thereafter, induce the beneficiary to believe that it would
not insist upon a forfeiture because of such nonpaymenc and
thereby cause her unnecessary trouble and expense.

5.   EVIDENCE—OFFER OF COMPROMISE.—In an action on a life policy,
defended on the ground of forfeiture for nonpayment of a pre-
mium note, testimony of insurer's offer of settlement or com-
promise, which was not coupled with a denial of liability, was
relevant on the issue of waiver of forfeiture.

6.   INSURANCE—FORFEITURE—WAIVER.—Waiver of forfeiture of a
policy, though in the nature of an estoppel, may be created by
acts, conduct or declarations insufficient to create a technical
estoppel, and the courts, not favoring forfeitures, are inclined to
grasp any circumstances which indicate an election to waive a
forfeiture.

Appeal from Clay Circuit Court, Eastern District;
*W. W. Bandy,* Judge; affirmed.

*Oscar A. Knehan* and *Gautney & Dudley,* for appel-
lant.

The validity of notes of this character is recognized
and upheld by this and other courts. 104 Ark. 288, 148
S. W. 1019; 143 Ark. 143, 220 S. W. 803; 230 S. W. 257;
85 Ark. 337, 108 S. W. 213. Where the stipulation pro-
vides that the policy shall be null and void upon the fail-
ure to pay the premium or premium note when due, it is
held to be self-executing, and the policy ceases to exist.
A promise to pay on the part of the company in such a
case, after notice of forfeiture, would have to be sup-
ported by a new consideration to be enforceable. While
the company might estop itself by conduct misleading the
insured to his prejudice, mere silence on its part, or

nonaction, is not sufficient to bring it within the rule. Here we are dealing with the beneficiary, and not the insured, and proofs of death were submitted under the express provision that, in doing so, the company did not acknowledge any liability. 200 Mass. 510, 86 N. E. 928; 18 Ga. App. 347, 89 S. E. 445; 28 N. W. 749; 86 Ill. App. 315; 75 S. W. 234; 112 Ark. 171; (U. S.) 26 L. ed. 765; 47 L. ed. 204; 156 Ark. 77; 65 Ark. 240; 86 Ark. 326. Non-waiver stipulation valid. Action taken under same does not constitute waiver of compliance with terms of policy. L. R. A. (N. S.) 1917F, p. 663. The legal evidence establishes that the premium note was not paid when due, that, by the terms of the policy, it was forfeited before the death of the insured, and that there has been no waiver of the forfeiture. Not only was the appellant entitled to the peremptory instruction requested, but it was clearly error to modify instruction 2 by adding the words "unless you find that payment of the note was extended or forfeiture of the policy waived," as that modification was without evidence to support it. There is an absolute want of evidence to sustain the submission of the issue of extension of time of payment of note. 72 Ark. 630; 75 Ark. 25. See also 87 Ark. 326.

*W. E. Spence* and *Costen & Harrison,* for appellee.

1. Any agreement, declaration or course of action on the part of an insurance company which leads the insured honestly to believe that, by conforming thereto, a forfeiture will not be incurred, followed by conformity on his part, will estop the company from insisting upon the forfeiture. 53 Ark. 494; 62 Ark. 43; 65 Ark. 54; 92 Ark. 378; 94 Ark. 227; 99 Ark. 476; 132 Ark. 548; 14 R. C. L. 1181, § 357; 25 Cyc. 858; 144 U. S. 439.

2. Where notes are given in payment or part payment of premiums, and the policy provides that, on default in payment of the notes, the policy shall become *ipso facto* null and void, the forfeiture is waived if, after default, the insurer continues to assert liability on the part of the insured to pay the notes. 14 R. C. L. 1192,

§ 369; 25 Cyc. 865; 81 Ark. 160. And requiring proof of loss with knowledge of the facts, especially if the beneficiary is induced thereby to incur expense or trouble under the belief that the policy will be paid, is a waiver of the forfeiture. 53 Ark. 494; 67 Ark. 584; 92 Ark. 378; 14 R. C. L. 1197; 25 Cyc. 872. See also 83 Ark. 575; 94 Ark. 227. An offer to pay a part of the loss under the policy would amount to a waiver of the forfeiture, if there was a forfeiture. 99 Ark. 476; 83 Ark. 575; 14 R. C. L. 1195, § 373; 25 Cyc. 872.

3. The testimony as to an offer of settlement made by the company was competent for the purpose of showing a waiver of the forfeiture, and it was properly admitted for that purpose.

WOOD, J. This is an action by the appellee, the benficiary in a policy of life insurance, against the appellants, on a policy issued to Ira L. Cox, husband of the appellee, by the American Life Association of Campbell, Missouri. The policy was in the sum of $1,000, and it is admitted that the Liberty National Life Insurance Company assumed the liabilities of the American Life Association on the latter's policies. Hereafter, for convenience, the company issuing the policy will be referred to as company.

The policy was issued on the 20th of September, 1918. The annual premiums on the policy were $32.89, payable September 30 of each year until twenty premiums had been paid. For the first premium Cox executed a note dated October 2, 1918. This note was for $32.89, payable on or before the 20th day of October, 1918. The note contained the following recital: "Upon default of payment of this note, the makers, indorsers, guarantors, and sureties, agree to pay all reasonable attorneys' fees and expenses of collection, and do hereby severally waive demand of payment, protest, and notice of protest of this note, and consent that time of payment may be extended without notice. The failure to pay any of above installments or interest, when due, shall cause this note to become due."

The policy contained the following provision: "A grace of thirty-one days, without interest, will be allowed for the payment of each premium except the first, and during this time the policy shall be in full force and effect. If the insured should die during this period, or before any year's premium is paid in full, the premium or installments for the current year will be deducted in any settlement thereunder; or, if any premium or premium note is not paid when due, this policy shall be null and void, and all premiums paid hereon shall be forfeited to the company, except as otherwise provided herein."

Cox died on the 28th of October, 1918. Proof of death was made out and presented to the company on blanks furnished by the company, which, among other things, provided: "The furnishing of these blanks by the American Life Association on which to make proof of any claim against it shall not be an acknowledgment of any liability of said association." The blanks were furnished by the company on November 9, 1918, at the request of the appellee, after the death of Cox. They were sent in a letter shown to have been written by the secretary of the company.

The blanks were filled out and returned to the company in person by the appellee's brother. At that time Cox had been dead two or three weeks. When appellee's brother went into the office of the company at Campbell, Missouri, he asked for the secretary, and stated he wanted to speak to the one in authority who was running the business. A lady was called from the back of the office, who came and looked over some papers on the desk, and said they could not make settlement, as the secretary was then in St. Louis. They didn't say anything at that time about the policy being forfeited. On October 30, 1918, the company wrote a letter to Cox which stated: "Your note for premium, dated Oct. 2, 1918, on policy No. 6262, for $32.89, will be due Nov. 1, 1918. Unless said note is paid to the association on or before said date, said policy will be forfeited, canceled, and of no effect, except as provided herein. You will

find the above note at the home office of the association. We trust you will give the matter your prompt attention." Up to the time of giving the above notice, the fact of Cox's death was unknown to the company. Two or three weeks before his death Cox had requested the Bank of Rector to write to the company in regard to the payment of the premium on his policy. In four or five days the bank had a reply.

On February 17, 1919, the father of the assured wrote to the company in regard to the claim caused by the death of his son, and stated that he hoped to hear from the company soon. The company, through its assistant secretary, replied to this letter Feb. 18, 1919, stating that the secretary of the company was absent, and that the letter would be brought to his attention when he returned. The father of the assured also had a talk with a man by the name of Bray, who said that they had talked the matter over, and could settle the claim at thirty cents on the dollar, and that the company would settle if appellee would take that. Witness didn't know who Bray was or what authority he had, but he represented to witness that he was in the insurance company's office back of the bank, and had been down about Greenway, settling claims.

The appellee testified that she, in company with her then husband, went to Campbell about the 28th of February, 1919, to talk to the company about the insurance of her former husband. They talked to Mr. Morgan and Mr. Bray. They did not, at that time, say anything about a forfeiture, but said they would settle for three hundred dollars. Witness offered to compromise with them for $500, and Morgan said they would pay it if witness would take out insurance in the new company, and no one suggested that they did not owe witness anything on the policy, or that it was forfeited. Witness believed the policy was worth one hundred cents on the dollar, but was offering to settle for $500 because she didn't want a suit. The note which they owed was not due.

Bray testified that he was superintendent of agencies for the appellant company in December, 1918. Morgan was the secretary and general manager. Bray settled some claims, such as were handed him by the board of directors. The claim in controversy was not handed witness by the board. The note given to the company for the first premium was never paid.

Bertha D. Morgan testified that, during the year 1918, she was employed by the company in the capacity of assistant secretary and stenographer. She had charge of the records of the company. William G. Morgan was secretary of the company between October 2, 1918, and January 27, 1919. During that time witness conducted the correspondence of the company. Mr. Morgan was absent from the office. She received the letter from the appellee dated November 9, 1918, notifying the company of the death of the assured and requesting the blanks for making proof of death. At the time she received this letter she didn't know that the note for the first premium had not been paid, because the same had been sent out for collection and had not been returned to the office. She forwarded the blanks, at the request of the appellee, before the company learned that this note had not been paid. The reason why the claim in controversy was not paid was because the note for the first premium was not paid at maturity, and, under the terms of the policy, the failure to pay this note rendered the policy void. The appellee, Mrs. Vaden, in company with her husband, made demand of the company for payment of the claim to Mr. Morgan, and he declined paying the same, stating that the premium note was not paid at maturity, and that Cox had died eight days after the note was due, and, for that reason, the policy was void and the company not liable. The appellee offered to deduct the amount of the note from the face of the policy, and Mr. Morgan informed her this could not be done, because the policy was already forfeited at the time of the death of Cox.

The above are substantially the facts which the testimony adduced by the respective parties tended to

prove. The company, in its prayer for instruction No. 1, asked the court to direct a verdict in its favor, which prayer the court refused. In its prayers Nos. 2 and 3 the company, in effect, asked the court to instruct the jury that, if the note given for the first premium fell due and remained unpaid at the date of the death of Cox, they would find for the company. The court modified these prayers by adding thereto the words, "unless you further find that the payment of the note was extended or forfeiture of the policy waived." The appellant duly excepted to the ruling of the court in refusing prayers Nos. 2 and 3, and in giving them as modified.

The company prayed for instruction No. 4 as follows: "The defendant company was not required to notify Mr. Ira L. Cox of the date when his note fell due, and if the defendant did notify him, or addressed notice to him which was received by some one else after his death and after the maturity of said note, stating, in said letter or notice, that said note would be due November 1, 1918, that would not revive the policy if the same had already been forfeited for the nonpayment of said note." The court refused this prayer, and the company duly excepted.

On its own motion the court defined the issues raised by the pleadings, and instructed the jury to the effect that, under the terms of the policy, if the note given for the payment of the first premium remained due and unpaid at the time of the death of Cox, they would find in favor of the company, unless the time for the payment of the note was extended by the company or the forfeiture waived; that if the company, after knowledge of the forfeiture, neglected to insist upon it, but, by its conduct, recognized and treated the policy as being in force, and induced the appellee to believe that the company would not insist upon the forfeiture and to incur expense and trouble by reason of such belief, then the company waived the forfeiture, if any, and the appellee was entitled to recover.

The court defined waiver as the relinquishment by the company of some known right, and told the jury that the burden was upon the appellee to prove that the premium note had been extended and that the forfeiture of the policy for nonpayment of premium had been waived. The court further instructed the jury that the testimony adduced in regard to the compromise or settlement between the appellee and the company was not allowed for the purpose of showing liability on the part of the company, but only in so far as it might shed light on the question of whether or not the company waived its right to a forfeiture of the policy for the nonpayment of the premium when due. The appellant duly excepted to the ruling of the court in giving the instructions on its own motion. The jury returned a verdict in favor of the appellee in the sum of $1,000, with interest from the date of the death of Cox. The court rendered judgment in favor of the appellee in the sum of $1,265 on the policy and assessed a penalty of 12 per cent. thereon and attorneys' fees for $250. From that judgment is this appeal.

The undisputed testimony shows that the note given for the payment of the first premium, due October 20, 1918, was not paid. The policy, which was the contract of insurance, under the express provisions thereof became null and void upon the nonpayment of the note when same was due. *Citizens' Life Ins. Co.* v. *Morris,* 104 Ark. 288; *Patterson* v. *Equitable Life Asso.,* 112 Ark. 171-179. The note for the first premium was due on or before the 20th of October, 1918, and, unless the time for the payment of this note was extended by the company, prior to the death of Cox, to a time beyond his death, then the policy was null and void after October 20, 1918, and was null and void on the 28th of October, 1918, the date of Cox's death.

In *Patterson* v. *Equitable Life Assn., supra,* we held that, after the death of the insured, the time for the waiver of the rights of the insurance company to declare a forfeiture had passed, except such waiver as might have been based upon knowledge of the death of the

insured.   Therefore the letter written by the company to Cox on the 30th of October, 1918, to the effect that his premium note, dated October 2, 1918, would be due November 1, 1918, would not have the effect of extending the time for the payment of the premium note.   Unless the time for the payment of the premium note had been extended before this letter was written, and, some time before Cox's death, October 28, 1918, had been extended to a period beyond his death, then the policy at the time of Cox's death had become null and void, and the appellee would have no rights thereunder.   If this letter were all the testimony in the record tending to prove that there had been an extension of time for the payment of the note for the first premium to a time beyond the death of Cox, it would not be sufficient for that purpose, because it was written after the death of Cox, and therefore he knew nothing of it.   But there is testimony in the record tending to prove that, two or three weeks before Cox's death, he, through the Bank of Rector, had correspondence with the company concerning the payment of the premium note on his policy.   In four or five days the company answered.   While there is no positive testimony that the answer of the company stated that it had extended his premium to November 1, 1918, yet this letter, when taken in connection with the letter of the company of October 30, 1918, stating that the note would be due November 1, 1918, tends to prove that the correspondence between Cox and the company through the Bank of Rector had resulted in an agreement on the part of the company to extend the time for the payment of the note for the first premium to November 1, 1918.   At least the jury might have so found from this testimony.   It made an issue which the court was justified in submitting to the jury as to whether or not the time for the payment of the first premium note had been extended, before the death of Cox, to November 1, 1918.   It is not disputed that this correspondence on the part of the company was by its secretary or one having authority to speak for the company.   The testimony therefore was relevant.

2. The next question is, was there any testimony to warrant the trial court in submitting to the jury the issue as to whether or not the company waived the non-payment of the premium note due October 20, 1918, if the time for the payment of such note had not been extended? The company, after the death of Cox, and at the request of the appellee, sent her blank forms for making proof of death. This was on November 9, 1918. The assistant secretary of the company testified that she conducted the correspondence between the company and the appellee; that Morgan, the secretary, was absent from the office at the time. At the time she received the letter calling for the blank proofs of death and answered by sending the same, she did not know that the note for the first premium had not been paid. It had been sent out for collection, and had not been returned to the office. These blanks for making proof of death contained the recital that "the furnishing of blanks on which to make proofs of any claim against the company shall not be an acknowledgment of any liability of said association." Therefore the furnishing of these blanks and the correspondence between the appellee and the company with reference thereto, if this were all, would not be any evidence whatever of a waiver of the forfeiture for the non-payment of the premium. But this is not all the evidence on this issue. The brother of the appellee, who was present at the time of Cox's death, stated that he attended to making the proof of death for his sister. He had the blanks filled out, and took them in person to the home office of the company at Campbell, Missouri, about two or three weeks after the death of Cox. He called for Morgan, the secretary, and was informed that he was absent, and witness then stated that he desired to speak to the one in authority who was running the business, and a lady came out and told the witness that they could not make a settlement, as Morgan was in St. Louis. Witness told the lady that he would leave the proofs, and, when Morgan returned, they could take it up and make settlement, and she replied, "All right."

Nothing was then said about the policy being forfeited. On December 31, 1918, about two months after the death of Cox, the agency secretary of the company wrote to one Weiderman at Rector, saying: "I think Mr. Morgan will be down to see you in regard to the Ira L. Cox claim when he returns from this trip." In about three and a half months after the death of Cox, the father of Mrs. Cox wrote to the company a letter in which he said the company had stated that it would be ready to pay all claims after the 10th of the month, and that he hoped to hear from the company soon. In answer to this letter the assistant secretary of the company, in acknowledging receipt of same, stated that the same had been placed on the desk of the secretary, Morgan, for his attention on his return to Campbell. The father of Mrs. Cox also had a talk with the superintendent of agencies of the company, who sometimes settled claims that were placed in his hands by the board of directors of the company, and this agent stated that he had talked it all over, and the company could not settle at the face value of the policy, but that they could settle at thirty cents on the dollar, and would do so if she would accept that. In this conversation nothing was said about the policy having lapsed. Appellee, then Mrs. Vaden, testified that, on the 28th of February, 1919, in company with her husband, she went to the home office at Campbell, Missouri, to talk to the company about her claim. She talked to the secretary and general manager, and also to the superintendent of agencies. No claim was made by the company at that time that the policy was forfeited, but, on the contrary, they said they would settle with her for $300. Witness offered to compromise with them for $500, and they stated they would pay it if witness would take out insurance in the new company.

It occurs to us that the above affords substantial testimony to carry to the jury the question of whether the company, after having knowledge that the note for the first premium had not been paid at the time of the death of Cox, did not, by its affirmative conduct for sev-

eral months thereafter, induce the appellee to believe that it would not insist on a forfeiture because of such nonpayment, and thereby cause her unnecessary expense, and put her to unnecessary trouble while acting under the belief that the company intended to settle her claim. Unless the time for the payment of the premium note had been extended, the company, after it ascertained that this premium note had not been paid before the death of Cox, knew that the policy had, by the nonpayment of such premium note, been *ipso facto* forfeited. Having such knowledge, unquestionably, if it had so advised the appellee, she and those acting for her would not have taken the time, and incurred the expense, and undergone the trouble, of corresponding and making trips to Campbell in order to have the claim adjusted and paid by the company. A simple word passed to the appellee and those representing her, to the effect that the policy was forfeited, that the company was not liable, and would not pay, would have settled the matter and excluded any belief on the part of the appellee that the company intended to settle with her. Instead of this, the company, by its conduct—at least the jury might have so found—held out hope to her that the policy would be paid, and, in the belief that it would be paid, she put herself to the expense and trouble of doing things she thought would be necessary to effect the payment of her claim. The jury might have found that the company, in arousing these false hopes, had waived a forfeiture, under the doctrine announced by this court in numerous cases. It will be remembered that the court excluded from the consideration of the jury the testimony in regard to the settlement or compromise as indicating financial liability on the part of the company, but ruled that such testimony might be considered in so far only as it indicated a course of conduct on the part of the company tending to prove that it had not declared and insisted on a forfeiture by reason of the nonpayment of the premium note. The testimony was relevant to the issue of whether or not there had been a waiver of forfeit-

ure. If the offer of compromise or part settlement had been coupled with a denial of liability, the case would have been different.

In 25 Cyc., p. 872, it is said: "If, with notice of facts entitling it to avoid the policy, the company enters into negotiations for a settlement, or requires the furnishing of proof of death, at some trouble and expense, it is estopped from insisting on a forfeiture." See also 14 R. C. L. 1195, § 373.

The doctrine is firmly established by the highest courts in this country, and approved by us in numerous cases, that "forfeitures are not favored in law," and that "courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so, on which the party has relied and acted. Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured honestly to believe that, by conformity thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop, and ought to estop, the company from insisting on a forfeiture, though it might be claimed under the express letter of the contract." *Insurance Co.* v. *Eggleston,* 96 U. S. 577, quoted by us in *Insurance Co.* v. *Gibson,* 53 Ark. 494; *Interstate Business Men's Accident Association* v. *Green,* 132 Ark. 548. As is said in 14 R. C. L. 1181, § 357, "waiver of a forfeiture, though in the nature of an estoppel, may be created by acts, conduct, or declarations insufficient to create a technical estoppel, and the courts, not favoring forfeitures, are inclined to grasp any circumstances which indicate an election to waive a forfeiture."

Our conclusion therefore is that the court did not err in refusing appellant's prayer for a peremptory instruction in submitting the issues to the jury. The court also correctly declared the law applicable to these issues. The judgment is correct, and it is affirmed.

McCULLOCH, C. J. (dissenting). It is entirely a matter of speculation, and without substantial support

in the proof, that the company ever wrote a letter to the insured extending the date of payment of the note to November 1, 1918. When the notice was sent out on October 30, it was after the death of the insured, the company not being advised of that fact, and it is without probative force, and has no place in this case. It does not tend to establish the fact that there had been an agreement for an extension of the note, nor is there, according to my view, any ground for holding that the company waived the forfeiture after the death of the insured by entering into negotiations with appellee. There was nothing in the world done by the agents of the company to induce appellee to change her course of conduct or to incur expense other than the mere fact that they permitted her to carry on negotiations in an effort to secure payment of the policy. The blanks sent out for proofs of death contained an express notice that no liability was recognized.

The company denied liability under the policy, and all that was offered in settlement was by way of compromise. It is very well settled by decisions of this court, and it is an elemental principle of the law of evidence, that evidence of an offer to compromise is not competent in the trial of an issue concerning the liability for the matter sought to be compromised. The court erred in admitting the testimony as to compromise for any purpose. The trial court ruled that the testimony concerning the proposed compromise was not competent "as indicating financial liability on the part of the company," but that the testimony could be considered as indicating a course of conduct on the part of the company tending to prove that it had waived the forfeiture. The effect of this ruling was to tell the jury that the testimony was not competent as directly establishing liability, but it might be considered indirectly for the purpose of establishing liability in showing a course of conduct on the part of the company which rendered it liable under the policy. It seems to me to be a very novel proposition, to say the

least of it, to declare the law to be that testimony concerning a proposed compromise is not admissible as direct evidence of liability, but that it may be received as indirect evidence as tending to establish a waiver of forfeiture. The evidence was not admissible at all, for, if received at all, it was necessarily considered for the purpose of establishing liability, *i. e.*, a waiver of the defense of forfeiture.

Mr. Justice SMITH concurs in this dissent.