AMERICAN INSURANCE UNION *v.* BENSON.

Opinion delivered February 7, 1927.

1. INSURANCE—CONSTITUTION AND BY-LAWS AS PART OF CONTRACT.— In an action by a beneficiary on a certificate of insurance, defendant benefit society having taken over certificates of members of another society to which assured belonged, the constitution and by-laws of defendant were admissible as part of the contract of insurance, and that the members have notice of, and are bound by, the provisions of same.

2. INSURANCE—NOTICE OF CONSTITUTION AND BY-LAWS—ESTOPPEL.— The beneficiary in a benefit certificate, suing thereon, is estopped to deny that assured had notice of the provisions of the Constitution and by-laws of defendant where assured agreed to and signed an instrument witnessing the merger between the original insurer and defendant society, and acknowledged her contract of insurance with defendant by paying premiums to it, and where plaintiff bases his action on such merger agreement.

3. INSURANCE—WAIVER OF FORFEITURE.—In an action by the beneficiary on an insurance certificate, where the defense was that the certificate was forfeited for nonpayment of premiums, evidence *held* sufficient to warrant finding by the jury that the policy was not forfeited.

4. INSURANCE—WAIVER OF FORFEITURE.—Any conduct or declaration by the insurer which leads the insured to believe that forfeiture of the policy will not be incurred estops the company from insisting on a forfeiture.

Appeal from Calhoun Circuit Court; *W. A. Speer,* Judge; affirmed.

*T. E. Helm,* for appellant.

*J. S. McKnight,* for appellee.

WOOD, J.  Margaret Ritchie became a member of the Mutual Relief Union of Fort Smith, Arkansas, in September, 1916.  As such member she received a certificate insuring her life in the maximum sum of $1,000, in favor of G. B. Benson.  The Relief Union was afterward merged with the Home Protective Association, and the latter association was merged with the American Insurance Union under a contract which required the holders of certificates to pay all premiums and chapter dues on or before the 20th day of each month, without notice.  The payments were to be made to the cashier of

the Union. The failure to pay caused the policy to lapse, and no cashier or other officer could waive the obligation to pay. The member whose certificate or policy had lapsed could be reinstated at any time within six months by making application on a printed form, attested by the cashier and forwarded to the home office, and by depositing with the cashier the unpaid premium and dues and reinstatement fee of ten cents. The reinstatement had to be approved by the medical director. There was a provision that the receipt by the cashier of the premiums or chapter dues or reinstatement fee would not have the effect of reinstating a lapsed member until his application was approved by a medical director. No provision of the contract could be waived by any of the officers. There was a provision in the contract to the effect that the Union would not be liable to a beneficiary for more than the proceeds of one assessment of the roll to which said deceased member belonged, unless, at the expiration of the maximum period allowed to the members of said roll, said member elected to pay to the Union the regular rate for carrying said member for the full amount of the certificate. Mrs. Ritchie paid her dues until September, 1923, which was the maximum period for increase in her payments, and, under the contract, she had the right at that time to elect to pay an increased premium of $4.70 per month, which would entitle her beneficiary, at her death, to the full amount of her certificate. Mrs. Ritchie died April 2, 1924. This action was instituted by G. B. Benson, beneficiary in the certificate, against the American Insurance Union. He alleged that the defendant was liable for the full amount of the certificate, under the contract of merger by which it took over the certificate of Mrs. Ritchie. In its answer the Insurance Union denied that it was liable under the contract for any amount, but, under no circumstances, for more than the proceeds of one assessment of the members of the roll to which Mrs. Ritchie belonged.

Benson testified, and introduced the certificate issued to Mrs. Ritchie. Mrs. Ritchie died April 2, 1924. The

policy was in force at the time of her death. The secretary of the defendant notified witness when the assessments were due, and they were always paid. The assessment for October, 1923, was paid. $1.43 was the amount to be paid on the policy every month. The witness introduced cards from the defendant which showed that $1.43 was received for September, 1923, and $1.43 over, which was held as a credit to her account "pending choice of options upon reaching the maximum rate in September, 1923."

On April 24, 1923, the defendant wrote Mrs. Ritchie that her next premium would not be due until October 1, 1923, and that it was returning money order for $1.43. On January 11, 1924, the defendant wrote her that she had several options, designating them, under her contract with the defendant, one of which was a whole life level rate policy, on which the premium at her age would be $4.70, payable monthly, and the first would be due October 1. The letter concluded by stating: "When you make choice of a policy on which you wish to continue your insurance and pay the stipulated premium thereon and chapter dues, your protection will be worth every dollar agreed upon, and your membership and insurance will be on an equality with all other members of the American Insurance Union." When witness received this letter, he sent them, on January 16, 1924, $4.80. They held this check from that date until April 18, 1924. On March 31, 1924, the defendant wrote Mrs. Ritchie, in which letter she was notified that it would require $30.90 to cover her premiums through the month of April on the standard step rate, and $7.06 to cover her premiums on the maximum rate. In this letter the defendant asked her to advise regarding the option, and send remittance at the earliest possible moment. Two days thereafter witness sent defendant a check for $30.90, the amount defendant asked the assured to send.

On cross-examination the witness identified a letter written to the assured on February 18, 1924, stating "if it is your desire to have this policy placed in good stand-

ing on our records, it will be necessary to give this matter your prompt attention.'' The witness further stated, in answer to questions, that he had $1.43 in the hands of the defendant; that he sent them $4.80 on January, and $30.90 the day after Mrs. Ritchie was buried. On redirect examination witness stated that the defendant kept his money ninety days before returning it; that the assured did not receive the option for the new policy until in January, and later she received a letter stating she owed $30.90, and witness sent that; that he always sent what they requested. The defendant never wrote anything about reinstatement; after the defendant wrote that the assured was paid up to October 1, and said at the proper time it would give the option to take the policy and would send the papers on October 1, and did not do it, witness wrote defendant two letters about it. On April 18, 1924, the defendant wrote the assured the following letter: ''As your application for reinstatement has been rejected by our medical director, we are returning herewith two checks, one under date of January 17 for $4.80, the other dated April 4, for $30.90. These remittances have been held in our pending file awaiting the consideration of the application for reinstatement.'' Witness further testified that he notified defendant by letter of the death of Mrs. Ritchie the next day after she was buried, and requested it to send him blanks on which to make proof. Witness' letter was properly stamped and mailed; witness did not receive any response.

The court refused to permit the defendant to introduce its constitution and by-laws in evidence, to which ruling the defendant duly excepted. The secretary of the defendant testified, among other things, that no proofs of death were made out and filed by the beneficiary. He stated that checks aggregating $35.70 were mailed to the defendant April 4, 1924, two days after the member's death, which were returned with the statement that the application for reinstatement had been rejected by the medical director. The witness testified in September, 1923, Margaret Ritchie reached the maximum

assessment, and the level premium basis being $1.43 would purchase $200.84 had she been in good standing when she died. She had failed to make a choice of options in September, 1923, and automatically went upon the level premium basis.

The cashier of the defendant testified to the same effect. She failed to pay anything after September, 1923, was suspended for nonpayment October 20, 1923, was never reinstated, and was not a member at the time of her death. Attached to the deposition of the secretary of the defendant and made exhibits thereto were the contracts of merger between the defendant and the Protective Association of Springdale, Arkansas, and also the rider and contract between defendant and Mrs. Ritchie. Under this rider and contract the certificate holders agreed to make their payments, comply with the constitution and by-laws of the defendant, and the defendant agreed to assume the liability under the certificate. Among the exhibits is an application for reinstatement showing that Mrs. Ritchie's certificate lapsed in the month of October, 1923, and answering all the questions therein in favor of reinstatement, showing that she was in good health, etc., at the time of the application. The application for reinstatement is dated January 17, 1924, signed by Margaret Ritchie, and gives her address as Hampton, Arkansas. At the close of the application for reinstatement is the following certificate: "This is to certify that the above signature was written by the applicant in my presence and that he has deposited with me unpaid premiums and dues, including a reinstatement fee of ten cents, amounting in all to $37.75. I do recommend this applicant for reinstatement." Signed C. L. Jordan, cashier.

The court instructed the jury, in effect, that, if they believed from the testimony that the policy of Mrs. Ritchie lapsed for the nonpayment of dues October 20, 1923, nevertheless if the defendant, by the acts and conduct of its officers, led Mrs. Ritchie to believe that the policy had not lapsed or forfeited, and that she, acting

upon such belief, incurred expenses or trouble on account of the nonpayment of premiums or assessments, then the defendant waived its right to claim a forfeiture in this action; and if the jury so found, their verdict should be in favor of the plaintiff in the sum of $1,000. The defendant asked the court, in its prayer for instruction No. 1, to instruct the jury to direct a verdict in its favor, and its prayer for instruction No. 2 told the jury that, if they found that Mrs. Ritchie was suspended for nonpayment of dues on October 20, 1923, and failed to comply with the laws and requirements of the defendant before her death on April 3, 1924, their verdict should be for the defendant. The court modified the defendant's prayer for instruction No. 2 by adding thereto the following: "provided you further find that the said forfeiture was not waived by the defendant," and granted the prayer as modified. The court refused appellant's prayer for a directed verdict. The appellant duly excepted to the rulings of the court in the giving and refusing prayers for instruction. The jury returned a verdict in favor of the plaintiff in the sum of $1,000, with interest at the rate of six per cent. from June 2, 1924. Judgment was entered in favor of the plaintiff for that sum, from which judgment the defendant duly prosecutes this appeal.

1.    Learned counsel for the appellant contends that the court erred in excluding the constitution and by-laws of the appellant from the jury. Counsel are correct in this contention. In the merger contract between the appellant and the Home Protective Association, entered into on November 1, 1918, by which the appellant assumed liability to the certificate holders of the Home Protective Association, among whom was Mrs. Ritchie, was the following provision: "It is hereby understood and agreed that the members hereby consolidated shall be subject to the constitution and laws of the American Insurance Union now in force, or that may hereafter be in force, except as herein otherwise provided."

It is alleged in the answer of the appellant that "a rider and contract of consolidation between the Home Protective Association and the appellant was sent to Mrs. Ritchie and duly signed by her, and afterwards sent to the appellant; that, in this receipt, Mrs. Ritchie agrees that the rider and contract shall be attached to and form a part of her certificate and contract of insurance of the appellant "under the terms and conditions set forth in said rider and contract." While the appellant does not prove the above allegation of its answer, the appellee is not in an attitude to deny that Mrs. Ritchie received and signed the receipt containing the rider and contract of consolidation between the appellant and the Home Protective Association and that such contract was a part of her certificate and contract of insurance with the appellant.

The testimony of the appellee proves conclusively that the rider and contract were received by Mrs. Ritchie and agreed to by her, because she continued, after the merger agreement, as the appellee asserts and as the testimony and correspondence between Mrs. Ritchie and appellant shows, to pay her premiums to the appellant and to thus acknowledge that her contract of insurance was with the appellant. The appellee bottoms his action against the appellant on the ground that, under the merger contract, the appellant had assumed the liability on her policy of insurance. The cause, in this particular, is ruled by the recent case of *Knight* v. *American Insurance Union, ante,* p. 303, where we said: "The conclusion is irresistible that the assured member did receive the rider, for he continued, after the merger contract until his death, to pay the assessments to the appellee. The undisputed testimony therefore justified the trial court in finding that Horace Knight, the assured member, received a copy of the consolidation contract and accepted its provisions. The appellant predicated his cause of action upon such contract, and, having accepted the same, he is bound by its terms."

This court is committed to the doctrine that the constitution and laws of a fraternal benefit society are a part of the contract of insurance and that the members or certificate holders of such society have notice of and are bound by the provisions of the same. See § 6076, C. & M. Digest; *Sov. Camp W. O. W.* v. *Barnes,* 154 Ark. 486, 246 S. W. 55; *Sov. Camp. W. O. W.* v. *Newman,* 142 Ark. 132, 219 S. W. 759, 14 A. L. R. 903, and other cases cited in appellant's brief. To eliminate the error we have stated the contract of insurance upon which the appellee based his right of action as though it were a contract of insurance with the appellant, embracing the provisions of the latter's constitution and by-laws, and, in our consideration of the case, have given the appellant the benefit of these provisions. The question then is, was appellee entitled to recover when the contract is so treated?

2. This brings us to a consideration of appellant's second contention, "that the certificate had lapsed and all rights thereunder forfeited." The issue as to whether or not the policy was forfeited because of non-payment of premiums or dues was submitted to the jury under correct instructions. The material testimony bearing on this issue is set out above. Giving this testimony its strongest probative force in favor of the appellee, it was certainly sufficient to warrant the court in refusing to declare as a matter of law that the policy was forfeited, and was sufficient to warrant the finding by the jury that the policy was not forfeited, and to sustain the verdict in favor of the appellee. The testimony of appellant's secretary and also of its cashier was to the effect that Mrs. Ritchie defaulted in the payment of her installment dues for the month of October, 1923, in the sum of $1.43, and she was suspended because of such failure on October 20, 1923; that she was never reinstated under the constitution and by-laws of the company and that, if she had been in good standing at the time of her death, the value of her certificate would have been $200.84, under the constitution and laws of the appellant and the rider and merger contract by which she was bound. The jury

might have found that all these contentions were effectually refuted, not only by the testimony of the appellee but likewise by the certificate of appellant's cashier, C. L. Jordan, which was made an exhibit to appellant's depositions, introduced in evidence, referred to in appellant's abstract and found in the record at pages 103 and 104. This document was designated "Application for Reinstatement" of a policy which, it states, lapsed in the month of October, 1923. It is dated January 17, 1924, and is signed by Margaret Ritchie and certified to by appellant's cashier as follows: "This is to certify that the above signature was written by the applicant in my presence, and that she has deposited with me unpaid premiums and dues, including a reinstatement fee of ten cents, amounting in all to $37.75. I do recommend this applicant for reinstatement." There is no testimony in the record to the effect that this amount of money was ever returned to Mrs. Ritchie. If the above certificate stated the truth, then Mrs. Ritchie, at the time of her death, had in the hands of the appellant more than enough money to pay the premiums due on a whole life level-rate policy from October to April, inclusive. Having this money in its hands from January 17, 1924, until after April 2, 1924, when Mrs. Ritchie died, a period of nearly three months, without returning the money and notifying Mrs. Ritchie that the appellant would not reinstate her policy, but would insist on a forfeiture thereof, appellant, by such conduct, must be held to have waived the forfeiture, and is estopped from claiming non-liability on the policy.

There were conflicts in the testimony, which it was the province of the jury alone to reconcile. The undisputed testimony shows that, when the appellant declared the forfeiture of the policy, October 20, 1923, it had in its hands sufficient money to pay the premiums due at that time, and its own correspondence tends strongly to prove that it did not intend to insist upon a forfeiture of the policy, but, on the contrary, was urging Mrs. Ritchie to exercise her option as to which form of insurance she

would finally accept. This was the situation at the time of her death. Appellee's testimony tends to prove that he complied with every request of the appellant to remit premiums, sending in the entire amount that appellant advised him was due, and that Mrs. Ritchie had paid, and was willing to pay at any time, a sufficient amount to prevent a forfeiture of the policy, if appellant had indicated that such was its intention. Appellant delayed making known its purpose to insist upon a forfeiture of the policy until after the death of the assured. Under the facts as the jury might have found them from the testimony in this record, the appellant must be held to have waived the forfeiture. The facts bring the case within the general doctrine announced in many of our cases as follows: "Forfeitures are not favored in law, and courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so, on which the party has relied and acted. Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured honestly to believe that, by conformity thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop, and ought to estop, the company from insisting on a forfeiture, though it might be claimed under the express letter of the contract. * * * As is said in 14 R. C. L. 1181, § 357, 'waiver of a forfeiture, though in the nature of an estoppel, may be created by acts, conduct, or declarations insufficient to create a technical estoppel, and the courts, not favoring forfeitures, are inclined to grasp any circumstances which indicate an election to waive a forfeiture'." *American Life Assn.* v. *Vaden,* 164 Ark. 75, at page 88, and cases there cited.

There is no reversible error in the record, and the judgment must therefore be affirmed.