BOLL (ANNA JANE), Appellant, vs. CATHOLIC KNIGHTS OF WISCONSIN, Respondent.

*January 6—February 4, 1936.*

For the appellant there were briefs by *Fox & Fox* of Chilton, and oral argument by *Leo P. Fox*.

For the respondent there was a brief by *Zimmers, Jaekels & Zimmers* of Milwaukee, and oral argument by *Raymond F. Jaekels*.

WICKHEM, J.   Joseph Boll became a member of the defendant society on December 6, 1891, and died December 1, 1930.   Plaintiff was the beneficiary under the policy in question, which was originally issued for $2,000.   In 1902, the amount was reduced to $1,000.   Joseph Boll paid his last assessment in December, 1929.   He was suspended as of January 1, 1930.   Shortly after December 12, 1930, the central office of defendant society received a check from the branch treasurer for $23.40 for the delinquent dues.   This was not accompanied by any advice relative to the death of insured; the letter of transmission merely stating that check was inclosed for Boll's insurance for one year.   In ignorance of the death and in view of his suspension, the society wrote to Boll, inclosing a form for reinstatement that included a certification of good health.   This form came back with the notation "Joseph Boll died December 1, 1930."   It appears that, after the death of Boll, his son, on behalf of plaintiff,

had paid to the financial secretary of the local branch the sum of $24.60 to cover assessments or premiums for the period between the time of suspension and the time of death. The secretary accepted this payment, issued a receipt therefor, and turned the money over to the branch treasurer, who sent to the central office the check above referred to.

It is plaintiff's first contention that insured had a reserve applicable to his policy which entitled him to extended insurance upon his suspension. Since insured was a member by the terms of a certificate issued prior to 1929, this contention is disposed of adversely to the plaintiff by the case of *Boll (Mary) v. Catholic Knights of Wisconsin, ante*, p. 306, 265 N. W. 67, and requires no further treatment in this opinion.

It is also claimed that, by reason of the payment of premiums by the beneficiary to an officer of the local branch nearly a year after the suspension of insured and several days after his death, together with the other facts heretofore referred to, defendant is estopped to deny that insured was in good standing. In the alternative, it is contended that the conduct of the branch officers, as well as that of defendant itself, constituted a waiver of the default.

There is no basis for the claim that defendant is estopped to assert the suspension of insured. We discover neither representations nor conduct on the part of defendant by which plaintiff was induced to change her position to her detriment. Nor do we discover any grounds upon which the claim of waiver can be sustained.

The rules of the order are that a member failing to pay his dues "shall *ipso facto* become suspended." The assessments are made by the central office upon the members. Each branch is held responsible for the collection of dues or assessments, and a branch is subject to suspension if all the dues of its members are not accounted for. This is made the basis for a claim that defendant order is bound by the acceptance of premiums by the financial secretary of the branch.

At the time of accepting the premiums the branch had no responsibility or agency in the matter. Boll had been formally suspended, and the branch was no longer charged with the collection of his dues. Assuming that the local officers of the branch might still have had some function to perform in case of a demand for reinstatement, it is clear that the acceptance of the premium would not constitute a waiver. The proceedings for reinstatement are prescribed by the by-laws, which require an insured to apply for reinstatement and to give a certificate of health in connection therewith. When the society received the check it carried out the usual procedure of sending to the insured a reinstatement form for his execution. When it discovered the fact that insured was dead at the time the premium was paid, it promptly returned the check to the branch.

Statements of the financial secretary at the time of receiving payment that he did not see why the payment would not reinstate the member are of no consequence. These were merely expressions of opinion, and plainly indicate that officers of the branch did not consider or represent that the matter of reinstatement was one for their decision. The money was accepted for transmittal to the central office and subject to whatever action would be taken there. There is nothing in the facts to indicate an intention on the part of the local officers to relinquish or waive in the name of defendant a known right of defendant. Hence, the statements do not constitute a waiver whatever the fact or scope of the agency may have been.

Further than this, it is clear that the right to reinstatement would only be accomplished in accordance with the laws of the order, which required application by member within sixty days after suspension on a form prescribed by the order, or application after sixty days accompanied by certificate of health or medical examination, in the discretion of directors; that neither the local branch nor its officers could waive the

requirements of the by-laws relative to reinstatement. See *Gifford v. Workmen's Ben. Asso.* 105 Me. 17, 72 Atl. 680; *Bixler v. Modern Woodmen of America,* 112 Va. 678, 72 S. E. 704; *Order of the Golden Cross v. Bernard,* 26 App. D. C. 169, 6 Ann. Cas. 694.

*By the Court.*—Judgment affirmed.