UNION LIFE INS. CO. *v.* BREWER.

5-1448                                    309 S. W. 2d 740

Opinion delivered February 3, 1958.

[Rehearing denied March 3, 1958]

*E. M. Arnold,* for appellant; *M. J. Harrison,* of counsel for appellant.

*Martin L. Green* and *Edward E. Bedwell,* for appellee.

J. Seaborn Holt, Associate Justice. This is an action to recover $1,500, statutory penalty, costs, and attorney's fee, on an accident policy on the life of Virl Brewer, who was accidentally killed about 1 a. m. on November 19, 1956. Appellant, insurance company, denied any liability on the policy in question on the ground that the policy had lapsed and forfeited for failure to pay the premium when due. By agreement the case was submitted to the trial court on stipulated facts. From a judgment in favor of appellee, beneficiary of the policy in question, comes this appeal.

Appellee sought recovery on two grounds: (1) that at the time of the alleged forfeiture, appellant had in its hands the proceeds of the cash surrender value of a small life policy of the insured in the amount of $18.72, which it should have applied on premium due to prevent forfeiture, and also (2) that appellant by its acts and conduct had waived prompt payment of premiums due, and was estopped to claim a forfeiture. The trial court based its judgment for appellee on appellee's first ground above. We have concluded, however, that the judgment cannot be supported on that ground, but that there was substantial evidence to warrant a judgment for appellee on the second ground,—and that is,—that appellant had entered into an agreement with appellee sometime around November 14, 15 and 16 to accept the premiums on November 19; that it did accept payment from appellee on that date; and by so doing had waived prompt payment of premiums due in October, thus preventing a forfeiture. ''Though error appears upon the record, yet if the judgment of the Court below is correct upon the whole record, it will be affirmed,'' *Headnote Payne* v. *Bruton,* 10 Ark. 53. ''Where the verdict and judgment, upon the whole record, are right, the judgment will be affirmed though the Court may have erred upon some question of law,'' *Headnote, Sweeptzer* v. *Gaines et al.,* 19 Ark. 96. ''A judgment may be correct, although based on mistaken reasons,'' *Williams, Adm.,* v. *Lauderdale,* 209 Ark. 418, 191 S. W. 2d 455.

Pertinent facts recited in the stipulation were: ''. . . that if said policy was in force on November

19, 1956, the amount due the plaintiff thereunder as beneficiary would be $1,500. (3) That the policies issued to Virl Brewer provided for payment of premiums weekly, and under the terms of the policy, said policy had a four weeks' grace period, so that failure to pay any weekly premium for a period of more than four weeks would cause the policy to lapse. The weekly premiums due October 15, October 22, October 29 and November 5 were not received or paid on those dates, but were collected by the agent at the plaintiff's next door neighbor on Monday, November 19. The end of the grace period for the payment of the premium due October 15, 1956, was November 12, 1956. (4) That Virl Brewer died in the State of Oklahoma as a result of an automobile accident at about 1:30 a. m., Monday, November 19, 1956 . . . (6) That the defendant company as a matter of practice does not require a written application for reinstatement to be signed by a policy holder on policies that have been lapsed less than thirty days but permits its agents to collect premiums on policies lapsed within thirty days and send them to the home office with his report on the then physical condition of the policy holder and for its consideration and its acceptance or rejection of such oral application for reinstatement. It is stipulated that defendant's agent did not take a written application for reinstatement of any policy held by Virl Brewer when plaintiff saw the agent on or about November 14th, 15th or 16th at which time it was agreed that the premiums unpaid would be left with her next door neighbor on Monday, November 19th. It is further stipulated that on Monday, November 19th the agent went to the home of the next door neighbor of plaintiff and then and there received from said neighbor an amount in cash sufficient to pay all premiums and entered the record of such collection in the premium receipt book normally used for that purpose; and that before the end of that day said agent learned that Virl Brewer had died early that morning at 1:30 a. m. and immediately returned to the house where he had made the collection and marked the premium entry he had made that day 'void' and gave the person a temporary

receipt for said amount. (7) That under date of November 27th the defendant from its home office in Little Rock forwarded by registered mail its check to plaintiff covering the premiums collected by its agent on November 19; that said registered letter was received by plaintiff on December 3rd and on December 5, 1956, said check was returned to defendant by plaintiff's counsel . . . (10) That neither the plaintiff nor defendant knew that Virl Brewer was dead when the premium was left with plaintiff's neighbor and picked up by defendant's agent on November 19, 1956; . . . (11) That from and since the year 1950, when the insured first bought a policy from the defendant, the defendant's agent in Fort Smith came to the home, or nearby residence, to collect premiums; that the insured did not pay any premiums direct to the home office or at the branch office.''

The admitted and undisputed facts showed that appellant collected the premiums weekly at the home of appellee or at the home of a nearby neighbor; that the premium payments were never made at any time at the home office or the branch office of appellant; that for several months prior to the death of insured collection of premiums were irregular (as shown by the receipt book in evidence); that appellant and appellee had agreed that the premiums in amount of $2.10 were to be paid in full on Monday, November 19, at the home of a neighbor of appellee; that they were so collected and a receipt given in accordance with this agreement. On these basic facts we hold that there was some substantial evidence that appellant by the above agreement entered into with appellee had waived the right to claim a forfeiture and lapse of policy in question.

Our well established general rule, as announced in many of our cases, is as follows: ''Forfeitures are not favored in law, and courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so, on which the party has relied and acted. Any agreement, declaration, or course of action on the part of an insur-

ance company which leads a party insured honestly to believe that, by conformity thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop, and ought to estop, the company from insisting on a forfeiture, though it might be claimed under the express letter of the contract . . . as is said in 14 R. C. L. 1181 Sec. 357, 'waiver of a forfeiture, though in the nature of an estoppel, may be created by acts, conduct, or declarations insufficient to create a technical estoppel, and the courts, not favoring forfeitures, are inclined to grasp any circumstances which indicate an election to waive a forfeiture.' *American Life Assn.* v. *Vaden,* 164 Ark. 75, at page 88, and cases there cited." *American Ins. Union* v. *Benson,* 172 Ark. 1043, 219 S. W. 1007.

"If an insured has been lead to believe by a course of dealing that premiums will be accepted after they are due, it has been held that payments may be made after such time, although the insured is then dead . . . Nor can a policy be forfeited because the premiums were past due at the insured's death, where it is reasonable to suppose that such premiums would have been accepted had the insured lived . . . , (Section 8562) And it has been frequently stated that such a waiver may be manifested by conduct as well as by words, or by oral, as well as written, statements. (Sec. 8403) . . . Policy conditions as to forfeiture for the nonpayment of premiums or premium notes are regarded as being for the benefit of the insurer, and hence may be waived by it . . . (Sec. 8401)," Volume 15, Appleman on Insurance.

"Forfeitures are so odious in law that they will be enforced only where there is the clearest evidence that such was the intention of the parties. If the practice of the company and its course of dealings with the insured and others known to the insured have been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted on, the company will not be allowed to set up such forfeiture as against one in whom their conduct has induced such belief." *Sov. Camp WOW* v. *Newsom,* 142 Ark. 132, 219 S. W. 759, 14 A. L. R. 903.

Appellant also contends that the trial court erred in allowing an attorney's fee without first having heard evidence tending to establish the proper amount. See *Union Central Life Ins. Co.* v. *Mendenhall,* 183 Ark. 25, 34 S. W. 2d 1078. A search of the record (not abstracted by appellant) discloses that the judgment of the trial court contains this recital: ". . . the face amount of the policy was in the sum of $1,500, and the plaintiff herein is entitled to said sum, plus 12 per cent penalty, plus reasonable attorney's fees. It is therefore, ordered and decreed, that the plaintiff do have and recover against the defendant the sum of $1,500, the sum of $180.00 being a 12 per cent penalty, for an attorney's fee in the sum of $250.00, and for her costs, . . ." In this connection, appellee says, "it is admitted that no proof was taken as to the amount (of attorney's fee) and it is admitted that there was no hearing concerning the amount of a reasonable fee, but since the issue is not properly before the court, then the objection should be dismissed," and appellant says: "The opinion and order of the court reflects the trial court's views which resulted in judgment for appellee in the sum of $1,500 together with penalty and an attorney's fee." Appellant has not abstracted the judgment of the trial court in which an attorney's fee was set by the court as fair and reasonable, and absent any showings, on appellant's part, that the fee was not a reasonable one, we think appellant may not now complain.

The judgment is affirmed.

Mr. Justice GEORGE ROSE SMITH dissents.

GEORGE ROSE SMITH, J., dissenting. The policy sued upon lapsed, at the expiration of the grace period, on November 12. There is no proof that the policy had ever been allowed to lapse before; so of course there is no proof of a custom on the part of the insurer to accept the payment of premiums after the expiration of the grace period. By the terms of the contract, however, the insured was entitled to have the policy reinstated, upon the payment of the past-due premiums and the submission of evidence of good health.

Brewer died soon after midnight on the morning of November 19. That afternoon Mrs. Brewer, without knowledge of her husband's death, left the amount of the overdue premiums at her neighbor's house. The insurer's agent, also without knowledge of Brewer's death, went by and picked up the money. When the agent, still later in the day, learned of Brewer's death he returned to the neighbor's house, canceled the receipt in the premium book, and left a temporary receipt with the neighbor. Eight days later the insurer forwarded its check for the amount of the premiums collected on November 19. This tender was refused by Mrs. Brewer.

On these facts alone it could not be seriously contended that the agent's acceptance of the premiums effected a reinstatement of the policy. As far as I know, the authorities are uniform in holding that the insurer is not bound by its acceptance of premiums, upon a lapsed policy, without knowledge of the insured's earlier death. Appleman on Insurance, § 2058; *Sovereign Camp, W.O.W.,* v. *Cox,* 221 Ala. 58, 127 So. 847; *Dillon* v. *National Council,* 244 Ill. 202, 91 N. E. 417; *Boll* v. *Catholic Knights,* 220 Wis. 312, 265 N. W. 70. At most the insurer is required, in this situation, to return the premiums without unreasonable delay, but that requirement was met in this case.

The majority impose liability on the ground that Mrs. Brewer and the insurer's agent, two or three days before November 19, agreed that she would leave the premiums with her neighbor on that day. What happened, according to the stipulated facts, was that Mrs. Brewer visited the agent's office to obtain a check for the cash value of a different policy which Brewer had elected to surrender. On that visit, the stipulation states, "it was agreed by and between plaintiff and Durham [the agent] that plaintiff would get the check endorsed by Virl Brewer and would leave certain premiums on [the policy in question] at the home of her next door neighbor on Monday, November 19."

To say that "it was agreed" does not, in my opinion, satisfy the plaintiff's burden of proving a binding contract. It is not suggested that there was any consideration for this agreement. Had Brewer lived and had Mrs. Brewer changed her mind about reinstating the policy,

surely no one supposes that the insurer could have enforced this asserted agreement. Furthermore, the agreement certainly contemplated, as an implied condition, that Brewer would be alive on November 19. This is necessarily so, for there is no suggestion that the collecting agent had the authority to waive the requirement that the insured be in good health at the time of reinstatement. For these reasons I am unable to say that the supposed agreement entitles the plaintiff to recover.