**Sandra Lawrence DICKERSON, Appellee,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY of the United States, a corporation, Appellant.**

**No. 79–1695.**

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1980.

Decided Sept. 9, 1980.

---

Kenneth Robert Shemin, Rose, Nash, Williamson, Carroll, Clay & Giroir, Little Rock, Ark., for appellant.

William B. Howard, Jonesboro, Ark., for appellee.

Before LAY, Chief Judge, HENLEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

This is an appeal in a diversity action brought by Sandra Lawrence Dickerson (appellee) against The Equitable Life Assurance Society of the United States (Equitable). Appellee sought the proceeds of her husband's life insurance policy, which Equitable claimed had lapsed for non-payment. The trial court[1] entered judgment for appellee and awarded her the full policy amount (less unpaid premiums) plus a statutory penalty and attorney's fees. Equitable appeals on the ground that the trial court decided the case on an issue not raised at trial or in the pleadings. For the reason discussed below, we affirm.

On January 25, 1974, Jerry S. Dickerson (Dickerson), an Arkansas resident, applied for an Equitable life insurance policy with the standard thirty–one–day grace clause.[2] Dickerson paid an initial premium of $47.50 at that time. He requested that future monthly premiums of $27.15 be paid in advance under Equitable's System–matic Plan, whereby Equitable would automatically draw checks on his account on the premium due date. System–matic billing was done by Equitable's New York office through the Chase Manhattan Bank. The checks which Equitable presented to the bank each contained the following statement:

This check when paid, is a receipt for amount(s) due on contract(s) indicated for the month and year of the date shown. This payment has been authorized by your depositor and is guaranteed by the Equitable Life Assurance Society of the United States.

Premiums were paid in this manner from February 1974 through January 1975. On February 25, 1975, Equitable drew on Dickerson's account for the February premium. The February check was dishonored on March 12. A notice of dishonor was sent to Equitable, but in accordance with Equitable's customary practice with its bank, the February check was presented a second time and was again dishonored on March 18. On March 25, 1975, Equitable drew on Dickerson's account for the March premium. The March check was honored, and Equitable applied the March 25 draw to the March premium.

The dishonored February check was received by Equitable on March 28. Rather than return the March payment, Equitable reversed the March payment and applied it to the February premium. This reversal forms the crux of Equitable's defense.

On April 2, Equitable deposited the March check for collection. On April 8, the March check was paid. On April 9, however, apparently on the assumption that the March check had also been dishonored, Equitable sent Dickerson a notice which erroneously stated that $54.30 (the amount of two premiums) was immediately due and terminated his System–matic Plan. Accordingly, Equitable did not draw on Dickerson's account for the April payment.

On May 6, Equitable sent Dickerson a Lapse Notice which erroneously stated that $81.45 (the amount of three premiums) was due for the time period between February 25 and May 25 and that that amount had to

---

1. The Honorable Paul X Williams, Chief Judge, United States District Court for the Western District of Arkansas.

2. "A grace period of 31 days will be granted for the payment of each premium after the first. The insurance will continue in force during the grace period but if the insured dies during the grace period of a premium then due and unpaid, the portion of the premium due which is applicable to the period from the premium due date to the end of the premium month in which death occurs will be deducted from the proceeds."

be received by May 12 to reinstate the policy.[3].

Dickerson died in a car accident on May 10, 1975.

After Equitable denied her claim, appellee filed suit in federal court on July 21, 1977. The case was bench tried before the Honorable Terry L. Shell on October 12, 1977, but he died before rendering judgment. The case was reassigned to another judge. After an opportunity to supplement the record, both parties stipulated to submitting the case on the transcript and briefs.

On June 7, 1979, judgment was entered for appellee. In the memorandum opinion filed the same day, the court summarized appellee's position as follows:

> Mrs. Sandra Dickerson, the insured's widow and beneficiary named in the policy, contends that Equitable had no right to apply the proceeds of the March check retroactively to cover the dishonored February check. Under her theory, the last day for which the premiums had been paid was April 21, 1975. Applying the 31–day grace period, the insurance was in effect on May 10 when the insured died.

Nevertheless, the judgment was based on overpayment of the initial premium. The $20.35 ($47.50 less $27.15) overpayment would have represented about twenty days of coverage, computed at $0.905 per day. The court therefore added twenty days to April 25, the date of lapse proposed by Equitable,[4] and held that the policy was still in force on the date of Dickerson's death.

Equitable filed motions to amend the district court's findings of fact under Fed.R. Civ.P. 52 and for a new trial under Fed.R. Civ.P. 59. Equitable claimed that the issue of overpayment was not raised by the pleadings or at trial. Equitable further stated that it could prove conclusively that the $20.35 was refunded to Dickerson in 1974. The court denied both motions. In its July 23, 1979 memorandum opinion, however, the court not only reiterated that there had been an overpayment, but also held that Equitable had not met its burden of proving the affirmative defense of forfeiture for non-payment and that the notices to Dickerson did not fulfill Equitable's duty of notifying the insured that a check had not cleared, particularly when the succeeding check did clear the bank and the insurance company's notice to the insured was in error.

On appeal, Equitable has three contentions: (1) that the trial court erroneously decided the case on an issue not presented in the pleadings or at trial; (2) that the court abused its discretion in rejecting the offered proof that the overpayment had been refunded; and (3) that the policy had lapsed for non–payment of a premium. On this final point, appellee maintains her position that the March check kept the policy in force.

If a judgment is correct for any reason it will not be reversed. Rule 61, Fed.R.Civ.P.; *Raycraft v. Duluth, Missabe & Iron Range Ry.*, 472 F.2d 27, 32 (8th Cir. 1973) (exclusion of evidence in disability case); *Miller v. Pennsylvania R.R.*, 161 F.Supp. 633, 636–37 (D.D.C.1958) (trial judge died between verdict and motions). We need not reach Equitable's first two contentions, because we agree with appellee that Equitable had waived its right to claim a forfeiture of the insurance policy.

The ultimate issue in this case is whether the policy was in force as of Dickerson's May 10 accident. The determinative fact is which premium was paid by the March 25 draw. If the March 25 draw were applied to the February premium, it would have covered the period from February 25 to

---

**3.** Strangely enough, on August 5–long after its receipt of a June 14 claim and death certificate–Equitable sent Dickerson a reinstatement offer. It said that his coverage had ended on April 17, that the due date of the unpaid premiums was March 25, and that he could reinstate by paying $137.05 (five premiums plus a late charge). It concluded, "Please disregard this letter if you have recently forwarded your payment."

**4.** Actually, Equitable claims that coverage ended on April 17. This discrepancy would not change the result under any theory.

March 25. Then the grace period would have expired and the policy been forfeited on April 25. On the other hand, if the March 25 draw were applied to the March premium, it would have covered the period from March 25 to April 25. Then the grace period would have kept the policy in force as of May 10.

In Arkansas, forfeitures of insurance policies are not favored. *National Investors Life Insurance Co. v. Tudor*, 571 S.W.2d 585, 589 (Ark. banc 1978); *Home Mutual Fire Insurance Co. v. Riley*, 252 Ark. 750, 480 S.W.2d 957 (1972); *Union Life Insurance Co. v. Brewer*, 228 Ark. 600, 309 S.W.2d 740 (1958); *American Life Ass'n v. Vaden*, 164 Ark. 75, 261 S.W. 320 (1924). Arkansas therefore follows the rule that the insurer's acceptance of a premium due on a certain day constitutes a waiver of forfeiture on the ground that a previous premium remains unpaid. *See Anderson v. Frank Reid Burial Ass'n*, 218 Ark. 817, 239 S.W.2d 12 (1951); 6 Couch on Insurance § 32.339 (2d ed. 1961). Furthermore, once the insurer has applied the payment to a particular premium due, the application may not be unilaterally altered, even though the insurer later contends that the application was made by mistake. *Fidelity Mutual Life Insurance Co. v. Click*, 93 Ark. 162, 124 S.W. 764 (1909). *See Ragge v. Bryan*, 249 Ark. 164, 458 S.W.2d 403, 407 (1970).

This is a clear case of waiver. Appellee has met her burden of proving that the March premium was paid. Equitable not only issued its receipt for the amount due on that date, but also credited Dickerson's account with payment of the March premium. Under its contract with Dickerson and as a matter of general insurance law, Equitable could not later reverse this payment. Equitable's acceptance of the March premium waived its right to declare a forfeiture for nonpayment of the February premium.

Equitable argues that its acceptance of the March premium could not constitute waiver because it was not done with knowledge[5] of the dishonored February check. But the argument fails on all counts. First, it is not correct as a statement of insurance law. *See Fidelity Mutual Insurance Co. v. Click, supra*, 124 S.W. 764. Second, even after Equitable had knowledge of the February dishonor, it took actions which were inconsistent with its purported intention to declare a forfeiture on the policy. The twice–dishonored February check was returned to Equitable on March 28, admittedly three days after the March 25 draw. Yet, it was not until April 2, when Equitable had knowledge of the February dishonor, that Equitable chose to deposit the March check, which was then paid and became a receipt on April 8. At that time Equitable's acceptance was irrevocable, but it may be indicative of intent that Equitable never attempted to refund the March payment. These actions, like Equitable's attempt to apply the March payment to the February premium, are inconsistent with an intention to declare a forfeiture for non–payment of the February premium. Equitable took a calculated risk in depositing Dickerson's March check. It thereby waived its right to declare a forfeiture on the policy.

Accordingly, we affirm the judgment of the district court.

---

5. Equitable claims that the first notice was of no legal consequence because it had unilaterally established a policy of presenting the checks twice and that it had no notice of the second dishonor before it drew on the March check. Appellee, on the other hand, relies on Ark.Stat. § 85–4–201 (Add.1961) for its argument that the bank was Equitable's agent, so that Equitable had constructive notice of both dishonors before it drew on the March check. This is a tangential issue, which we need not decide.