MUTUAL LIFE INSURANCE COMPANY *v.* PARRISH.

Opinion delivered June 10, 1899.

1. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—To prevent a miscarriage of justice, it is proper to grant a new trial for newly discovered evidence rebutting the undisputed evidence on which the verdict was based, where the party asking for a new trial had no knowledge of such rebutting evidence, and could not reasonably have been required to make effort to ascertain it before or during the trial. (Page 620.)

2. SAME—SURPRISE.—Where a party is surprised at the trial by testimony he knows to be false, and wishes to rebut it, it is his duty to ask a postponement or suspension of the trial till he can procure rebutting evidence; but if he does not know whether the testimony is true or false, nor whether he can rebut it, he will not be required to move for a continuance before he can ask for a new trial. (Page 620.)

3. INSURANCE POLICY—PRESUMPTION FROM POSSESSION.—The mere manual possession of a policy of life insurance by either party to the contract of insurance makes a *prima facie* case for that party, subject to be rebutted by proof *aliunde* that the contract was or was not complete and valid. (Page 621.)

4. SAME—WHEN INSURER NOT BOUND.—Where a contract of life insurance contained a condition that the policy should not take effect until the first premium should have been paid during the continuance in good health of the applicant, the insurer will not be bound unless such condition is complied with. (Page 622.)

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

STATEMENT BY THE COURT.

The plaintiff sued on a policy for $2,000 upon the life of his deceased wife, bearing date July 24, 1896, alleging that she died October 12, 1896. The policy is exhibited with the complaint, and recites that it is issued "in consideration of the application for this policy, which is hereby made a part of this contract."

The answer set up that the application provided that the contract should not take effect until the first premium on the policy should have been paid during the continuance in good health of the applicant, and that said premium was not paid,

nor the policy delivered, during her continuance in good health, nor until she had fallen sick of the malady of which she died.

The case was submitted to the court, sitting as a jury, which found in favor of the plaintiff, and rendered judgment accordingly. Defendant appealed to this court.

On July 24, 1896, Mrs. Parrish, of Waldo, Ark., applied there for a policy of $2,000 on her life for the benefit of her husband. The application was forwarded through the state agency at Little Rock, and on the 24th of August the policy was received by the state agency. At the time of the application, Mrs. Parrish gave two notes for the first premium, one a "delivery note" payable when the policy was delivered, the other payable on December 1st. The state agent sent the policy and the delivery note to Drake, the soliciting agent. Drake was then in Texas, and sent the policy and note to Dr. Weaver at Waldo for delivery upon payment. Weaver received them about September 1st, and held them, waiting for Mrs. Parrish to take them up. On October 6th Mrs. Parrish went to bed with the illness of which she died. On the evening of the 9th, when her condition was desperate, her step-brother paid the premium, and took the policy. She died on the 12th. The application, which was made a part of the policy, provided that the insurance should not take effect unless the first premium was paid in cash while the assured was in good health.

On the trial Parrish swore that he demanded the policy before his wife fell ill, but that its delivery was refused unless he would pay the full amount of the delivery note, when he had been promised a discount.

After setting out in its motion for a new trial grounds in three several paragraphs, the fourth ground of the motion is as follows:

"4. That the testimony of the plaintiff, who was a witness in the trial of the cause, and testified, in effect, that he offered to pay Dr. J. H. Weaver $25 in full of the delivery note, and demanded the policy on or about September 1, 1896, and thereafter, and within a few days, that he offered to pay Dr. Weaver the sum of $29.70, the full amount of the note, and demanded a delivery of the same with the policy, and that he at other times offered to pay the amount of the first premium, or such

an amount, less an agreed discount, to Dr. Weaver, and that the offer was declined prior to the time when the payment was actually made on the 9th or 10th of October, 1896, and at a time when Mrs. Lenora Parrish was in good health, —was an entire surprise to the defendant and its officers and attorneys; that they had never heard of any such offers; that, in their correspondence with Dr. Parrish, he had never informed them of any such offer, and that they at the time the trial began in good faith believed that he had never made any offer to pay any amount on account of the first premium until the payment was in fact made, either on the 9th or 10th of October, 1896; that the defendant, its officers and attorneys, had information that the delay in delivering the policy was due entirely to the failure of the plaintiff to raise money to pay the first premium, and that he, on more than one occasion, requested of the local agent, J. W. Drake, and of the local examiner, J. H. Weaver, indulgence until he could arrange and get the money to pay the said first premium; that, such being the case, they were not prepared on the trial of the cause to introduce evidence to show that the testimony aforesaid was not true, or to prove that it was true that no offer was made to pay the premium until it was in fact paid, and that the delay was entirely due to the failure of the insured, Mrs. Lenora E. Parrish, and of her husband, Dr. J. C. Parrish, to raise money to pay the first premium, or $25 thereon. Defendant alleges that the truth is that no offer was made to pay anything on account of the first premium until the payment was actually made, and it believes that if a new trial is granted it can establish these facts to a jury; that it was not prepared to establish them for the reason aforesaid, that it had never heard, or had any reason to suppose, that a different state of facts would be contended for. The defendant further alleges that J. H. Weaver and J. W. Drake were not at the time of the trial, and had not been, for a number of years, in the employ of the defendant company; that Drake is a non-resident of the state, and Dr. Weaver lives at Waldo, a considerable distance from the place of trial; that, after the defendant learned of the testimony aforesaid, it was entirely impossible for it to have produced either of said witnesses to testify in the cause; that the defendant has learned,

since the trial of the cause that it can prove the facts as above set out by it by the said witnesses, Weaver and Drake, and it herewith files an affidavit, duly verified by each of said parties, in support of this motion. It therefore prays that the verdict be set aside, and a new trial awarded."

Attached to the motion were the following affidavits:

"W. E. Hemingway, being sworn, says that he represented the defendant as its attorney in preparing for the trial of this cause; that he never had any information to the effect, or which would warrant him in believing, that any offer to pay the first premium of the policy sued on was ever made until the time when the payment was actually made; that he had no reason to suppose that testimony to such effect would be introduced on the trial of the cause. On the contrary, all information led him to believe, and he in fact did believe, that there would be no such testimony, and that the delay in finally paying the first premium was due to the failure of the insured and of her husband to offer to pay it earlier; that the testimony of Dr. Parrish upon this point was an entire surprise to him, and that he knows no way he could have anticipated it, or that he could have met it; that he believes the facts set forth in the fourth ground in the motion for a new trial are true.

"W. E. HEMINGWAY.

"Subscribed and sworn to before me this 5th day of May, A. D. 1897.                    "H. G. DALE, Clerk.

"By J. J. McEVOY, D. C."

Dr. J. H. Weaver says, upon oath, that he was in August, 1896, a local medical examiner of the Mutual Life Insurance Company, resident at Waldo, Ark.; that on or about August 31, 1896, the local agent of said company, J. W. Drake, delivered to him the note of Mrs. Lenora Parrish for $29.70, payable on delivery of the policy on her life, and the policy of the company to be delivered on payment of said note; that he notified Dr. J. C. Parrish that he held the policy and note, and requested him to call and pay the note and receive the policy; that Dr. Parrish, nor any other person for him or Mrs. Parrish, ever offered to pay the note or take the policy until it was done on the 9th or 10th day of October, 1896; that he was ready and willing, from the time the policy and note

were received, to deliver the policy on payment of the note, until instructed by Drake to hold policy for payment of second note, and did so the first time payment was offered. It is not true that on the 1st day of September, or any other day prior to that on which the note was paid, Dr. Parrish offered to pay $25, and take the note; or that the affiant refused to deliver the policy and accept settlement of the note on payment of $25; or the affiant told Dr. Parrish that he could not accept $25 in settlement of the note because he did not know what discount Drake had agreed to allow upon it. But affiant says he did know what discount Drake had agreed to give on the note, because he stated, in his letter to affiant forwarding the note and policy, that he had agreed to discount it $4.70, and he instructed affiant to take for it $25, which was the amount of it less $4.70. And affiant says that the delay in paying the note and taking up the policy was due to the failure of Parrish to provide money to pay the amount agreed upon, but agreed to do so in a few days later on. I received a letter of instructions not to deliver until the second note was paid.                    J. H. Weaver.

"Sworn and subscribed before me this 3rd day of May, 1897.                              B. F. Luce, J. P."

"Waldo, Ark., September 19, 1896.
"Mr. John Drake, Ladonia, Tex.:

"Dear Sir:—I have seen Dr. Parrish. He says only one of his notes is due now. He promised to have done that yesterday, but failed to do so. If you want me to collect both notes, please forward the other one to me, and instruct me what to do. Awaiting your answer, I remain

"Your friend,           J. H. Weaver."

J. W. Drake, being duly sworn, on his oath says: "In July, August and September, 1896, I was the local agent of the Mutual Life Insurance Company, of New York, at Buckner, Ark. That the application of Mrs. Lenora Parrish, upon which the policy sued on was written, was taken by him. Sometime in August, 1896, was in Waldo, and Dr. J. C. Parrish asked if I had heard anything from his wife's application. I told him that I had not heard anything, but that I thought it would be approved, and that the policy would reach me in a few

days. Dr. Parrish said that he did not know whether he would have the money or not when it came, and for me to notify him when I received it, and give him time to get up the money. I received the policy on the 25th or 26th of August, and on the 31st of the same month I sent it to Dr. Weaver to deliver to Dr. Parrish, and requested him to collect only $25 on the $29.70 delivery note, and to forward the amount to H. L. Remmel, general agent at Little Rock. Within five days after this, I received a letter from Dr. Weaver, stating that Dr. Parrish did not have the money, and asked a few days' indulgence. I wrote Dr. Weaver that if Dr. Parrish would take it up by September 10th it would be all right. On September 12th, I received another letter from Dr. Weaver, stating that Dr. Parrish had not taken up the policy, and asking me what he should do. In answer to that letter, I wrote Dr. Weaver that I had a few days yet allowed me for the delivery of the policy, but not to deliver it unless both notes were paid. I had then grown afraid of Dr. Parrish, because of his failure to pay the delivery note and take up the policy. I had never before that instructed or authorized Dr. Weaver to demand anything on the note maturing in December, or to demand more on the delivery note than $25. If Dr. Weaver ever demanded more than $25 on the delivery note, or demanded anything on the second note before I wrote him in reply to his letter received on the 12th of September, I never heard of it. If Dr. Parrish offered to pay $25 to Dr. Weaver on or about September 1st, on the delivery note, or if a day or two later he offered to pay the face of the delivery note, or if Dr. Weaver declined either of such offers, I never heard of it. Up to the time that I wrote the last letter that I have referred to, which was the third one I wrote Dr. Weaver on the subject, I was anxious to deliver the policy upon the payment of $25 in full of the delivery note; and if Dr. Weaver demanded more upon that note, or made any demand on the other note, or declined to accept $25 in payment of the delivery note, it was not under instructions from me, nor reported to me, and I knew nothing of it. I kept all letters upon the subject from Dr. Weaver to me on file until a short time ago. I then heard in some way that the matter was settled, and, believing that to be true, I de-

stroyed all of them, except one, which was preserved by accident. I attach it to this affidavit. It was answer to my third letter,'above referred to. I kept no copies of my letters to him.

"J. W. DRAKE.

"Sworn to and subscribed before the undersigned, a notary public in and for Fannin County, Texas, this the 3d day of May, 1897.          "E. W. CUMMINS,

"Notary Public in and for Fannin County, Texas."

H. L. Remmel, being sworn, says that he is the general agent of the defendant company within the State of Arkansas, and that he believes the facts set out in the fourth ground of the motion for a new trial are true.     "SID B. REDDING,

"Notary Public in and for the county of Pulaski, State of Arkansas."

And afterwards, to-wit, on the 3d day of June, 1897, the plaintiff appeared by T. J. Oliphint, his attorney, and the defendant by its attorney, and the motion for a new trial coming on to be heard, and the court, being sufficiently advised in the premises, orders that the motion be overruled. But the judge announced that if it was within his discretion, under the decisions of the supreme court of this state, to grant a new trial, he would be inclined to do so, if it were not for the fact that the affidavit of J. H. Weaver, in support of the motion for a new trial, shows that he demanded the payment of the note given in part payment of the first premium and payable December 1st, as well as the full amount of the delivery note before delivering the policy.

To the court's action in overruling the motion for a new trial the defendant at the time excepted, and the court granted leave to defendant to prepare and file its bill of exceptions.

*Rose, Hemingway & Rose,* for appellant.

The evidence failed to show a valid tender. One who would make a tender must actually have the money and offer it. Anson, Cont. 361; 2 Greenleaf, Ev. § 603; 2 Pars. Cont. 642; 2 Chitty, Cont. (11 Am. Ed.) 1192; 1 Add. Cont. § 356. The tender must be made to one authorized to receive it. 25 Am. & Eng. Enc. Law, 918; 10 Ark. 18; 28 Ark. 95; 11 Ark. 189. There was no acceptance of the appellee's proposition for

insurance, in the mere sending of the policy to appellant's agent to be delivered on payment of the notes.  Pollock, Cont. 12; Harr. Cont. 344; Metc. Cont. 18; L. R. 16 Q. B. D. 731; S. C. 38 Moak's Eng. Rep. 233; 13 Ark. 462; 1 Gray, 336; 103 Mass. 78; 117 Mass. 528; 102 U. S. 108; 2 Life Ins. Cases, 161; 41 Conn. 97;  S. C. 5 Life Ins. Cases, 29; 3 *id.* 612; S. C. 17 Minn. 153; 35 N. E. 190; 18 W. Va. 782; 92 U. S. 377.  No payment, except cash, was authorized by the company, and the agent could not bind it by any other sort of contract.  1 Biddle, Ins. §§ 201, 907.  The court erred in denying appellant a new trial on the ground of surprise.  The action of the trial court in this respect is reviewable here.  11 Ark. 671; 13 *id.* 362; 20 *id.* 496; 38 *id.* 498.  Appellant's case falls within the rule allowing a new trial on the ground of surprise and newly discovered evidence.  2 Ark. 346; *id.* 33; *id.* 133; 17 *id.* 404; 26 *id.* 496; Hilliard, N. Tr. 521; 51 Mo. App. 572; 39 Ill. App. 585; 52 N. W. 267; S. C. 50 Minn. 551; 60 N. W. 493; 34 N. Y. 911; 14 S. E. 186; 69 N. W. 77.

*T. J. Oliphint* and *A. S. Kilgore*, for appellee.

Appellant should have asked for a continuance, if surprised.  By failing to do so and proceeding to verdict, he waives the objection.  57 Ark. 64; 55 Ark. 568; 18 Conn. 484; 3 Mon. (Ky.) 14; 14 Wend. 62; 56 Cal. 473; 24 Cal. 240; 32 Cal. 211; 3 Graham & Waterman, New Tr. 968; Hayne, New Trial & App. § 85.  The acknowledgment of receipt of the first premium, contained in the policy, is binding on the company, in the absence of fraud, error or duress.  Bac. Ben. Soc. § 353; 10 La. Ann. 737; 37 Ill. 354; 77 Ill. 22; 41 Md. 59; 25 Barb. 189; 11 Ind. 462; 11 N. E. 620; 9 Western Rep. 284; 1 Disn. 2; 2 Disn. 128; 35 N. J. 429.  Mailing of the policy containing the acknowlegment of receipt of premium completed the contract.  40 N. J. L. 103; 29 N. J. L. 486; 30 Fed. Rep. 902; 1 B. & Ald. 681; 6 Wend. 103; 9 How. 390; 2 Kent's Comm. 477; Bac. Ben. Soc. § 272.

HUGHES, J., (after stating the facts.)  A majority of the judges of this court are of the opinion that there is error in the judgment of the circuit court in refusing to grant a new

trial upon the ground and for the reason set forth in the fourth ground of the motion, for which .error the judgment should be reversed, and this cause remanded for a new trial.

The motion and affidavits appended speak for themselves, and certainly seem to show that the motion should have been granted, in order that the cause might be tried and determined upon all the facts of the case, and that there might not be a probable miscarriage of justice for the lack of important legitimate evidence, of the existence of which the appellant did not know, and which he could not have been reasonably required to make any effort to ascertain before the trial nor until the trial was over.

The court announced that if it was in his discretion, under the decisions of the supreme court of this state, to grant a new trial he would be inclined to do so, if it were not for the fact that the affidavit of J. H. Weaver, in support of the motion for new trial, shows that he demanded the payment of the note given in part payment of the first premium and payable December 1st, as well as the full amount of the delivery note, before delivering the policy. It seems, from inspection of the affidavit of J. H. Weaver referred to, that it does not contain this statement. It was not until after the tender is alleged to have been made that Weaver received instructions not to deliver the policy till both notes were paid. If the affidavit of Weaver is true, justice will be defeated, unless a new trial be granted.

When a party is surprised upon a trial by testimony he knows to be false, and he wishes to rebut it, it is his duty to ask a postponement or suspension of the trial till he can procure his evidence. He cannot take his chances, without doing this, and, if he loses, then ask for a rehearing for newly discovered evidence. *Nickens* v. *State*, 55 Ark. 567; *Overton* v. *State*, 57 Ark. 60. But if he does not know whether the testimony is false or true, nor whether he can rebut it, how can he make the affidavit necessary to entitle him to an adjournment? He can ask a new trial only after he has ascertained the facts, unless he would swear to facts about which he knew nothing to get a postponement, which would be perjury. To get a continuance, one must swear to facts.

As the case must be remanded for a new trial, we state the court's views of the law applicable to the case.

Whether a contract for insurance has been completed "depends upon the question whether the respective parties have come to an understanding upon all the elements of the contract,—the parties thereto; the subject-matter of insurance; the amount for which it is to be insured; the limits of the risk, including its duration in point of time and extent in point of hazards assumed; the rate of premium; and, generally, upon all the circumstances which are peculiar to the contract and distinguish it from every other, so that nothing remains to be done but to fill up the policy and deliver it on the one hand, and pay the premium on the other. If, upon all these points, an agreement has been arrived at, and no stipulation is made that the delivery of the policy shall be the test of the consummation of the contract, and no law makes such delivery a condition precedent to its validity from that time, unless another time is fixed, the contract is complete, and binds the parties. The policy, as we have seen, is not essential to its validity. It is but the form and embodiment, the expression and evidence, of what has already been agreed upon, adding nothing thereto and detracting nothing therefrom. And whether issued immediately upon the arrival at a mutual understanding, or subsequently, before the loss or after the loss, with or without knowledge, or not issued at all, the obligations of the parties are not affected." 1 May, Insurance (3 Ed.), § 43, and cases cited; *id.* § 43A, and cases cited. "If an application sent on approval is actually accepted by the company at its home office, though no notice of the acceptance is given to the insured, and afterwards rejected only because the premises burned before a policy was made out, the company is bound, and this question of fact is for the jury." *Id.* § 54C; *Welsh* v. *Continental Ins. Co.*, 47 Hun, 598. "A policy may be binding, although never delivered between the parties. *Loring* v. *Proctor*, 26 Maine, 18, 29. Everything depends on the intention of the parties. *Id.* § 55A.

"If there has been no payment of the premium, and no delivery in fact of the policy, the contract is, *prima facie*, incomplete, and he who claims under it must show that it was

the intention of the parties that it should be operative, notwithstanding these facts. The presumption of law is that the delivery of the policy and the payment of the premium are dependent upon each other. But this presumption may be rebutted by showing a waiver of the payment or such other facts as go to show the intention and understanding of both parties that the policy shall be valid as if delivered, notwithstanding the non-payment of the premium." The mere manual possession of the policy by either party makes a *prima facie* case for that party, subject to be rebutted by proof *aliunde* that the contract of insurance was complete and valid, or that delivery was essential to completion or not without delivery. 1 Bac. Ben. Soc. § 273, and cases cited.

Unless provided otherwise in the contract, the acceptance of the proposal to insure for the premium offered is the completion of the negotiation, and, after the policy or certificate has been forwarded to the agent of the company for delivery, the contract cannot be rescinded without the consent of the party insured. It is, of course, different if any act remains to be done by the insured, or if it be stipulated that it shall not be binding until delivered by the agent, or shall not be operative till the first premium is paid. *Northampton, etc., Ins. Co.* v. *Tuttle*, 40 N. J. L. 103; 1 Bacon, Ben. Soc. § 272, p. 538.

Without discussion of the various instructions given and refused by the court, we have given at some length the court's views of the law that seems applicable to the case under consideration.

For the error of the circuit court in overruling the fourth ground of the motion for new trial, the judgment is reversed, and the cause is remanded for a new trial.

WOOD and RIDDICK, JJ., concur in judgment, but not in the opinion rendered.