MISSOURI STATE LIFE INSURANCE COMPANY v. BROOKS.

Opinion delivered March 21, 1927.

1. INSURANCE—PAYMENT OF PREMIUM—JURY QUESTION.—In an action on a life insurance policy, under evidence that insured remitted a cash payment and extension note for the balance of the premium, in conformity with the insurer's offer to extend time of payment of premium, the issue as to whether the insurer received the cash and note before the policy lapsed for nonpayment of the premium was properly submitted to the jury.

2. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict on conflicting evidence is conclusive on appeal.

3. INSURANCE—FORFEITURE—WAIVER.—In an action on a life policy, evidence from which the jury might have found that, after lapse of a policy for nonpayment of the second premium, the insurer received cash in part payment thereof and that insured

mailed an extension note for the balance, together with an application for reinstatement, which were retained by the insurer for several months without complaint until after insured's death, *held* to present the issue whether the insurer waived a forfeiture of the policy for nonpayment of the premium.

4. INSURANCE—FORFEITURE—ESTOPPEL.—Any agreement, declaration or course of action on the insurer's part which leads insured to believe that, by conformity therewith, a forfeiture will not be incurred, followed by conformity therewith, will estop the insurer from insisting on a forfeiture.

Appeal from Hot Spring Circuit Court; *Thomas E. Toler,* Judge; affirmed.

*Allen May* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*D. D. Glover,* for appellee.

WOOD, J.  On July 2, 1924, the Missouri State Life Insurance Company, hereafter called the appellant, issued its policy in the sum of $1,000 to one Ora Brooks on which she paid the annual premium of $17.42. The next premium on the policy was due July 2, 1925. T. B. Brooks, the husband of Ora Brooks, also carried a policy with the appellant. These policies were taken out at Mangham, Louisiana, where they lived. The agent of the appellant at that place was Alex Watson. In May, 1925, Brooks made application to appellant through its agent at Mangham for permission to pay a part of the next premium due on the policy of Ora Brooks and to give a note for the remainder. On May 14, 1925, the agent wrote the company as follows:

"T. B. Brooks wishes to give his note to cover premiums on policies of himself and wife, Ora Brooks. His personal address is Malvern, Arkansas."  In answer to this letter the company wrote Ora Brooks on May 19 to the effect that she would have until August 2, 1925, to make settlement of the premium and inclosed in the letter an extension note for her to sign in the sum of $13.46, which note was to become due January 22, 1926, and appellant requested in the letter that, if she was unable to pay the amount of the premium in cash on August 2, 1925, she sign the note and inclose a remittance of $3.96.  T. B.

Brooks signed the extension note for his wife, and returned it to the company in May, 1925. This note recites, in part, that "although the annual premium due the second of July, 1925, had not been paid, the insurance was continued until midnight of the due date of the note, January 2, 1926." It further recites that, if the note were paid on or before that date, such payment, together with the cash, will then be accepted by the company as a payment of the premium, and that all rights under the policy would be continued, the same as if the premium had been paid when due, and, if the note were not paid when due, it should cease to be a claim against the maker, and the company would retain the cash as a compensation for the earned premium for the extended insurance granted to the assured up to the date of the maturity of the note. The company kept the note from May until August 21, 1925. A letter was written to the company by Brooks on August 15, 1925, in which he states that he is inclosing money order for $6.50 in half payment of Ora Brooks' policy, and that he had overlooked the fact that the premium was due July 2, and thought it was due August 2, and that he would sign up his notes and his wife's note and would pay in full with interest on October 15, 1925. On August 21, 1925, the company wrote Mrs. Brooks, stating in substance that it had received the remittance of $3.96 in cash, with the signed note, and that it was sending her a new note to be signed by her, instead of her husband, and also inclosing the original note. The letter further stated as follows: "Since this policy is in a lapsed condition at this time, we are inclosing an application for reinstatement. This matter will have our immediate attention upon receipt of the application for reinstatement and the note properly signed and witnessed. Kindly give the above your immediate attention." On the same day the company also wrote Brooks, in which letter it stated that it had received the remittance from him of $6.50 and that it was deducting $3.96 for the policy on the life of Mrs. Brooks, leaving the sum of $2.24 to apply on Brooks'

individual policy. In addition to the $3.96 that had been sent in May, the $6.50 was sent to the appellant to pay on the policy of Mrs. Brooks. There is a postal money order in the record, dated August 12, 1925, for $6.50.

Mrs. Ora Brooks died on November 1, 1925. After her death, Brooks reported the same to the appellant. Appellant sent to Brooks a check for $3.96 on the First National Bank of St. Louis, dated Oct. 21, 1925, payable to the order of Ora Brooks. Brooks received this check between the 6th and 8th of November. The appellant also, on the 28th of December, 1925, wrote Brooks a letter in which it inclosed to him checks for $13.96 and $3.96, which he, at the suggestion of his counsel, had sent the appellant after the death of Ora Brooks, and in this letter the appellant stated that it had sent its check for $3.96 in the letter of October 26, 1925, prior to the death of Mrs. Brooks, and its files in the matter were closed at that time, and appellant further stated that the policy had no value whatever and that it was not liable thereon. There were cashiers' checks in the record on the First National Bank at Malvern, Arkansas, dated December 21, 1925, for $13.96 and $3.96, respectively, in favor of the appellant. These checks, as stated, were sent by Brooks to the appellant. The company had never paid anything on the policy.

This action was instituted by T. B. Brooks, hereafter called appellee, as administrator of the estate of Ora Brooks, against the appellant, to recover on the policy. The appellant answered, denying liability, and the above are substantially the facts in favor of the appellee, which the testimony, giving its strongest probative force, tended to prove. The cashier of the appellant testified in substance that the second annual premium on Mrs. Ora Brooks' policy was due July 2, 1925; that he wrote on May 14, 1925, as above set out, notifying the appellant that Brooks wished to give his note to cover the premium on the policies of himself and wife, and he identified the further correspondence set out above between the appellant and Brooks. He stated that the policy on the

life of Mrs. Brooks lapsed on August 2, 1925, and that the first appellant heard from any one concerning the policy was the letter of August 15, 1925, written by appellee to the appellant, inclosing the money order for $6.50.   This letter was thirteen days after the expiration of the period of grace.   This letter also contained the extension note which was signed by T. B. Brooks. The note was returned in the appellant's letter of August 21, 1925, referred to above, and appellant had heard nothing further from either of them with reference to Mrs. Brooks' policy. After a policy lapsed it required an application for reinstatement submitted to the company, which could only be approved by a committee appointed at the home office. Appellant sent letters to Mrs. Brooks on September 8, 1925, and again on September 18, 1925, calling her attention to the fact that the appellant had not received the new note which was to be signed by her and the application for reinstatement, and notifying her that her policy was in a lapsed condition, and requesting her to give an early reply advising the company as to what she intended to do.   The witness stated that a properly executed note by Ora Brooks and her application for reinstatement was never received at the home office, and therefore the policy was never really reinstated. The $3.96 which Ora Brooks had sent to the appellant was not accepted by the appellant as a consideration for reinstatement, but was held by it awaiting a properly signed note and application for reinstatement.   The money was not received at the home office until August 17, 1925, and appellant returned the same to Mrs. Brooks October 26, 1925, by a check payable to her order, issued from the home office of the appellant, in this letter of October 26, 1925.

The court told the jury, in its first instruction, in substance, that, if it found that Ora Brooks, during her lifetime, complied with the conditions of the policy, and that the same was a valid policy at her death, the verdict should be in favor of the plaintiff, appellee.   In other instructions the court further submitted to the jury the

issue as to whether or not the appellant had accepted in cash a part of the second premium due on the policy and an extension note for the balance, after the policy lapsed for the nonpayment of the second premium, and told the jury, if they so found, their verdict should be in favor of the plaintiff, appellee. The court submitted to the jury the issue as to whether or not, after the time for the payment of the second premium, the appellant had not waived a forfeiture of the policy by acceptance of a part of the premium in cash and the signing and returning to the appellant of an extension note for the balance of the premium in accordance with appellant's instructions. Instruction No. 5 is as follows:

"You are instructed that, if you should find that the policy sued on had at any time lapsed, and you further find that the defendant company sent her an application for reinstatement, and that she filled it out, as required by the forms sent her, and that she paid part of the premium in money, and signed a note for the remainder of the premium, and that it was accepted by it, then you are told and instructed that the plaintiff would be entitled to recover in this suit."

The appellant duly excepted to the rulings of the court in the granting of appellee's prayers for instructions and in refusing the appellant's prayer for a directed verdict. The jury returned a verdict in favor of the appellee in the sum of $1,000. Judgment was entered in appellee's favor for that sum, from which judgment is this appeal.

1. The provision in the policy as to reinstatement is as follows: "If any premium is not paid on the date when due or within the period of grace, and this policy has not been surrendered, the company will reinstate the policy of said due date at any time thereafter, upon evidence of insurability satisfactory to the company, and payment of all arrears of premium, with interest at the rate of six per cent. per annum."

The jury might have found from the testimony, *supra,* that the appellant, as early as May 19, 1925,

offered to extend the time of the payment of the second premium if the assured would remit the sum of $3.96 and sign an extension note for the balance of $13.96, due January 2, 1926; that the assured attempted to comply with this request by remitting the cash of $3.96 and a note signed by her husband for the balance. There is a decided conflict in the evidence on this point. The testimony of the appellee tends to prove that he signed the note for his wife, which the company sent to her to be signed, and returned the same, and that this was done in May, 1925. His testimony and the testimony of his daughter tends to prove that the note was signed by him and sent back immediately. The testimony of the appellee also tends to prove that he mailed to the appellant the sum of $3.96 in cash in compliance with the appellant's request about that time. The testimony of appellant's cashier tends to prove that, after writing the letter of May 19, 1925, the appellant did not hear anything further concerning Ora Brooks' policy until August, 1925. While the cross-examination of the appellee disclosed some indefiniteness and uncertainty as to whether the money was sent by postoffice order, check or cash, he finally testified that he sent $3 in greenbacks and the rest in stamps and through the mail about the time he mailed the letter with the extension note signed by himself for his wife, which was in May. The jury therefore might have found from the testimony on behalf of the appellee that the appellant received a part of the second premium in cash and the extension note for the balance before the policy lapsed because of the nonpayment of premium due August 2, 1925, and that the policy had not lapsed, and was therefore not forfeited at that time. The court correctly submitted this issue to the jury.

2. The jury might have found, from the testimony of the appellee, that the appellant kept the first extension note signed by him for his wife from May, 1925, till August, 1925, before it requested that another note be executed by Mrs. Brooks individually, and before it requested her to sign an application for reinstatement.

The testimony of the appellee tends to prove that this request of the appellant was promptly complied with by Ora Brooks signing the new extension note and application for reinstatement, and by having the same witnessed, and then mailing the same to appellant in the self-addressed envelope furnished Mrs. Brooks for that purpose. In the meantime, on the 15th of August, 1925, the appellee wrote to the appellant remitting the sum of $6.50, which he states was half the premium on Ora Brooks' policy. The appellant, in its letter of August 21, 1925, acknowledged the receipt of that amount and credited the sum of $3.96 on premium due on Ora Brooks' policy and the balance on T. B. Brooks' policy. In this letter of August 21, 1925, the appellant likewise admits that it had received the note signed by Brooks for his wife, and states that it was returning a new extension note and application for reinstatement to be signed by Mrs. Brooks, and that the policy was in a lapsed condition at that time. Again the testimony is conflicting. Brooks and his daughter testified that Ora Brooks signed the new extension note and application, and that same was witnessed as requested by the appellant, and that the letter inclosing this new extension note and application was properly mailed to the appellant in an envelope self-addressed, while the appellant's cashier testified that neither the note nor the application for reinstatement had ever been received at the home office. And, again, appellant's cashier testified that, on September 8, 1925, appellant properly mailed a letter addressed to Mrs. Brooks, notifying her that it had not received the extension note and application for reinstatement signed by her, and requesting her to sign and return the same immediately, and another letter to the same effect on September 18, 1925, and, having received no answer, the appellant wrote the letter of October 26, 1925, to Ora Brooks, inclosing to her a check for $3.96, and concluded by stating that appellant would be glad to reinstate her policy upon receiving satisfactory application for reinstatement, together with a settlement of arrears. But the appel-

lee, Brooks, testified concerning these letters that, after he had written the letter of August 15, 1925, he never heard from the appellant any more. He stated that, prior to the death of his wife, there was no complaint from the appellant concerning the extension note she had sent to the company; that she died believing that her policy was valid. Appellee testified that the appellant had never returned the $6.50 which he had sent to the appellant to pay on Mrs. Ora Brooks' policy. But the testimony for the appellant tended to prove that the appellant accounted for that amount by crediting $3.96 on the policy of Mrs. Brooks and the balance on T. B. Brooks' premium.

Now, the jury have settled the above conflicts in the testimony in favor of the appellee, and the verdict of the jury on these issues of fact is conclusive here. The jury might have found from the above that, after the time had elapsed when the payment of the second premium was due, the appellant received of Ora Brooks the sum of $6.50 in cash as a part of the premium due on her policy, and that she executed an extension note for the balance, which would not be due until January 2, 1926; that she inclosed this extension note, with the application for reinstatement, in an envelope self-addressed to the appellant, which it had sent her for that purpose, and stamped and mailed the same, and that appellant made no complaint thereafter, as long as she lived, that the extension note had not been properly signed, and that Ora Brooks died believing her policy was valid and in force; that the $3.96 which Ora Brooks had sent in cash to the appellant in May as a part payment on the second premium was not returned by appellant and received by the appellee before the death of Mrs. Brooks, and that appellant had never returned the $6.50 in cash which the appellee had sent appellant in the letter of August 15, 1925, and that the extension note signed by the appellee and sent through the mail to the appellant had never been returned to the appellee.

Therefore it was for the jury, under the evidence, to determine whether or not the policy had lapsed because of the failure of Ora Brooks to pay the second premium, and whether or not the rights of the appellee thereunder, as administrator of Mrs. Brooks, had been forfeited. The court submitted these issues under instructions in which there are no prejudicial errors to the appellant.

In *American Life Association* v. *Vaden,* 164 Ark. 75, 261 S. W. 20, we said: "The doctrine is firmly established by the highest courts in this country, and approved by us in numerous cases, that 'forfeitures are not favored in law,' and that 'courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so, on which the party has relied and acted. Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured honestly to believe that, by conformity thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop, and ought to estop, the company from insisting on a forfeiture, though it might be claimed under the express letter of the contract.' As is said in 14 R. C. L. 1181, § 357, "waiver of a forfeiture, though in the nature of an estoppel, may be created by acts, conduct, or declarations insufficient to create a technical estoppel, and the courts, not favoring forfeitures, are inclined to grasp any circumstances which indicate an election to waive a forfeiture." See also *American Ins. Union* v. *Benson,* 172 Ark. 1043, 291 S. W. 1007.

The above doctrine is applicable to the facts as found by the jury under the evidence. There was evidence to sustain the verdict. The trial court therefore did not err in refusing appellant's prayer for a directed verdict, and its judgment entered in favor of the appellee is correct, and it is affirmed.