JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY *v.*
HENSON.

4-5778 136 S. W. 2d 684

Opinion delivered February 12, 1940.

*C. M. Buck,* for appellant.
*Feitz & Cherry,* for appellee.

HOLT, J. This action was begun in the Mississippi circuit court, Chickasawba district, by appellee, Susanna C. Henson, as beneficiary, to recover on a life insurance policy, alleged to have been issued by appellant, John Hancock Mutual Life Insurance Company, on the life of E. L. McCullars, her grandson, in the sum of $1,000 and for double this amount if death should result solely by external, violent and accidental means.

It was alleged in the complaint that the policy had been duly issued to the insured, E. L. McCullars, the first quarterly premium paid, the policy delivered, that it was in full force and effect at the time McCullars was shot and killed on November 10, 1934, and that he had at all times fully complied with all the terms and conditions arising under said contract of insurance; that due notice and proof of death had been made, and sought recovery in the sum of $1,000 on the life of the said McCullars and an additional $1,000 for his accidental death, or a total of $2,000, together with an attorney's fee and penalty.

Among the defenses set up by appellant were that there was never any valid delivery of the policy to the insured, McCullars, and the payment of the first quarterly premium of $8.07 was never paid so as to put the policy in force and effect.

Appellee recovered judgment below on both the ordinary death claim and the accidental death clause of the policy in the total sum of $1,995.93. From the judgment comes this appeal.

Among the assignments of error urged by the appellant here are that the evidence shows that the policy sued on was never delivered and that the first quarterly premium of $8.07 was never paid and, therefore, there can be no liability. After a careful consideration of this entire record we have reached the conclusion that appellant is correct in these contentions.

It is provided in the policy: "This insurance is granted in consideration of the application herefor, a copy of which is attached hereto, and made a part of this contract." The application provided: "That if payment of the premium has not been made with the application, any policy which may be issued hereon shall take

effect only if I have had no medical treatment since the date of the application, and then only in the event that it shall be delivered to, and actually received by me, and the first premium or installment thereof actually paid while I am alive and in sound health, and that whether the premium is paid with the application or otherwise, delivery and payment shall constitute an acceptance of the policy and of all of its conditions. That a receipt on the form attached hereto is the only receipt the agent is authorized to give for any payment made before the delivery of the policy.''

On this question as to whether the policy was delivered and the first quarterly premium paid, the testimony as reflected by the record is to the following effect:

Leonidas Henson, uncle of the insured, testified that he was present on the Saturday night, November 3, 1934, when Bujewski, appellant's agent, came to appellee's home bringing the policy in suit. When this agent arrived he remarked to the witness: ''Lee, here is Elmo's policy. He went through nonmedical o.k.''

He further testified that while he was in and out of the room he did not recall the conversation that Bujewski and McCullars had until Bujewski started to leave when the following conversation occurred: ''Well, Elmo told him, he said, 'Now, I want you to be here next Saturday night and collect the balance of this money,' and he said, 'All right, Elmo, I will be here or send somebody,' and he stepped out the door and left.''

He further testified that on the day named Elmo McCullars was at the appointed place, ready and willing to pay the balance of the premium, and that when Bujewski failed to arrive at the appointed hour McCullars turned over to him (Leonidas) $4.07 to pay Bujewski. Bujewski, however, never did call for the money, despite his promise to do so.

Appellee, Mrs. Henson, testified that she was present when Bujewski took the insured's application and also on November 3rd when he came to her home bringing the policy in question; that McCullars, the insured, and Bujewski were in an adjoining room, but there was an opening between; that when Bujewski arrived he told

McCullars that he had brought his policy and that McCullars had passed all right; that she saw the policy; that Bujewski handed it to Elmo McCullars; that McCullars took the policy and sat down and went to reading it.

· She further testified that McCullars seemed to be in a hurry; that he handed the policy back to Bujewski and Bujewski told him to keep the policy and McCullars said: · "No, you take them and keep them and when you come back I will have all of the money to pay them out"; that Elmo gave the agent four dollars; that Bujewski said he would bring the policy back the next Saturday.

She further testified: "He (meaning Bujewski) wanted to leave the policy with my grandson and my grandson told him to take it back until later on. He wanted him to think he was honest because the man didn't know anything about it and Elmo told him he would have all the money when he came back later."

Lucille Tolber testified that appellant's agent brought the policy to her home where the Hensons lived on November 3rd and saw McCullars holding the policy in his hands as if he were reading it; that the first information she had that the policy was not left in the possession of McCullars or the Hensons was the next Saturday night about ten o'clock.

Appellant's insurance agent, Bujewski, testified that he never delivered the policy and never collected the first premium; that McCullars, the insured, gave him $4 with the understanding that he was to hold the $4.00 for McCullars until the balance of the premium was paid. It is conceded that no part of the premium was paid at the time the application was made. He admitted that he went to McCullars' home on November 3rd with the policy; that he showed McCullars the policy and told him that he was ready to deliver it and collect the first premium and McCullars told him he was short of money, but that McCullars gave him $4 on the premium of $8.07 and told Bujewski to hold the $4 until the next·week when he would pay him the balance of $4.07. He·gave McCullars his personal receipt and intended to deliver the policy the following week; that he advised McCul-

lars that the policy would not be in force and effect until all the premium was collected.

He further testified that he did not get back to town until late the following Saturday night and did not call on McCullars to deliver the policy and collect the balance of $4.07.

There is also in evidence a letter from Bujewski to his district manager in St. Louis, dated December 5, 1934, which contains the following paragraph: "I wish to advise that I had made arrangements to call on Mr. McCullars for the Saturday of November 10th to collect the balance of premium and deliver the policy. I failed to keep the appointment account of being on a call at that time quite a ways from his residence and was not able to get there at the time he suggested."

It is conceded that the rights of the parties are governed by the laws of Missouri where the contract in question was entered into.

The contract before us requires that the policy is to take effect "only in the event that it shall be delivered to, and actually received by me, and the first premium or installment thereof actually paid while I am alive and in sound health." We think, under the facts presented here, that neither of these provisions was complied with by the insured, and, therefore, the policy was never in effect.

With reference to the delivery of an insurance policy and the payment of the first premium, the Supreme Court of Missouri in *Cravens* v. *New York Life Ins. Co.*, 148 Mo. l. c. 599, 50 S. W. 519, 53 L. R. A. 305, 71 Am. St. Rep. 628, said: "However perfect in form the contract may have been and although all of its other terms and conditions may have been complied with, payment of the premium during the life and good health of the assured and delivery of the contract to him were conditions precedent in order to complete its execution."

As to the rule governing on the question of delivery of the policy in question, the text-writer in Couch's Cyclopedia of Insurance Law, Vol. 1, p. 223, § 118, says: "Actual or manual delivery of a policy of insurance is

unnecessary, if the contract is otherwise complete and the parties intend that it shall be effective without such a delivery, . . . the parties undoubtedly may validly contract that a policy shall not take effect until delivered, and if there be a provision or an agreement that the policy shall not be in force until actually delivered to the insured, actual delivery is a condition precedent, and the contract is not consummated, nor is the company bound, in the absence of such delivery, unless compliance therewith be waived, as it may be.''

The law seems to be well settled not only in Missouri, but in Arkansas as well, that where the policy, or application being made part of the policy, required actual delivery during the lifetime and good health of the insured and payment of the first premium as a condition precedent to the policy becoming effective, the burden is on the plaintiff to show that these requirements have been met.

In *National Life & Accident Insurance Company* v. *Davison,* 187 Ark. 153, 58 S. W. 2d 691, this court said: ''An insurance company may limit its *liability* to recovery of premiums paid if an insured was not in sound health on the date of the policy, and a condition that the policy shall not take effect unless delivered during the lifetime and good health of the insured is a valid condition precedent to the liability of the company. 37 C. J. 405.''

And in *Mutual Life Insurance Company* v. *Parrish,* 66 Ark. 612, 52 S. W. 438, this court said: ''The mere manual possession of the policy by either party makes a *prima facie* case for that party, subject to be rebutted by proof *aliunde* that the contract of insurance was complete and valid, or that delivery was essential to completion or not without delivery.''

It appears from this record that the trial court took from the jury the issue of the right of appellee to recover $1,000, the face amount of the policy in question, and rendered judgment for this amount in favor of appellee and in doing so made the following declaration: ''At this time both parties joining in a request for an

instructed verdict as to the amount of $1,000, the court declares as a matter of law and fact that the insurance company in this case has waived, by mailing premium notice and by other evidence in the ·case, the contention of non-delivery of the policy; and the payment in full at or prior to the time of delivery; that judgment should be for the plaintiff for $1,000, less the balance due for the first quarterly premium and for proper interest and cost and that there should be no penalty in this case.''

It seems undisputed that appellant did mail a printed notice of a quarterly premium to become due January 21, 1935, on the policy in question, more than two months after McCullars' death. This notice was addressed to McCullars at his home in ·St. Louis, Mo. It arrived at McCullars' address on January 5, 1935, and was opened and read by appellee, the beneficiary. We cannot agree that this notice sent out by the company two months after insured's death amounted to a waiver or an estoppel.

In the case of *Curtis v. Prudential Insurance Company of America,* 55 Fed. 2d 97, a case arising in North Carolina, the court said: ''The contention that the notice given of the payment due for the second quarter was a waiver of all conditions that existed, with reference to the first payment, is, we think, without merit. A notice of the second quarter's payment was issued from the home office of the company, and was a mere matter of routine carried out in compliance with the North Carolina law requiring notices to be sent out at a certain stated time before the due date. Certainly the purely mechanical act of sending out a notice by one department of a large insurance company having that duty to perform with respect to thousands of policies could not be considered to constitute a waiver of the two conditions that were here necessary to be performed before any contract existed; that is, payment of the first premium and the delivery of the policy. Under some circumstances, such a notice might be held to prevent the forfeiture of a contract already in effect, but certainly cannot be held to give life to a contract that never existed.'' See, also, the case of *Ross v. New York Life Insurance Company,* 68 Fed. 2d 727.

After a careful review of the entire case, we conclude, that there was never in fact a delivery of the policy in question to the insured, and the first quarterly premium was not paid in accordance with the terms of the insurance contract. The trial court, therefore, erred in failing to direct a verdict in favor of appellant at the close of all the testimony. Accordingly the judgment will be reversed, and, since the case seems to have been fully developed, it will be dismissed.