### STANDARD ACC. INS. CO. v. ROBERTS et al.

#### No. 12240.

Circuit Court of Appeals, Eighth Circuit.

Dec. 31, 1942.

Cecil R. Warner, of Fort Smith, Ark. (E. N. Moseman, of Detroit, Mich., and Harry P. Warner, of Fort Smith, Ark., on the brief), for appellant.

David S. Partain, of Van Buren, Ark. (R. A. Young, Jr., of Fort Smith, Ark., J. E. Yates, of Ozark, Ark., and Theron Agee, of Van Buren, Ark., on the brief), for appellees.

Before STONE, SANBORN and RIDDICK, Circuit Judges.

STONE, Circuit Judge.

The Standard Accident Insurance Company issued its liability policy to Herbert Roberts. Thereafter, personal injury judgments were secured against Roberts by Clyde, Pearl, George Willie and Forest Wayne Primm. Thereafter, the Standard filed this action against Roberts and the Primms to obtain a declaratory judgment that it was not liable to them on the above policy. The trial court found that the cause of the injuries to the Primms was not within the coverage of the policy but determined that the Standard, "with full knowledge of the date, place and circumstances of the injuries" had assumed and retained control of the investigation and defense of the damage suit under such circumstances that it was estopped from denying liability thereon to the detriment and prejudice of Roberts. This is an appeal by the Standard from the judgment dismissing its petition.

Appellant presents three points: (1) that there was no liability under the policy and liability cannot be extended by estoppel; (2) that no estoppel was proven; (3) that insured was not prejudiced by the acts and conduct of Standard.

Appellees contest the above points and, in addition, urge: (1) that the policy should have been reformed to express the intention of the parties thereto; (2) that the court should have allowed reasonable attorney fees and the statutory penalty; (3) that the policy covered the accident causing the injuries to the Primms. Appellant urges that none of these three additional matters presented by appellees is open here because appellees took no cross-appeal. In this situation as to contentions of the parties, it is necessary to determine just what contentions are examinable here.

Since appellees' contentions as to reformation of the policy and as to allowance of attorney fees and penalty seek to change or to add to the relief accorded by the judgment which was in their favor, they can raise here such issues only by a cross-appeal. Le Tulle v. Scofield, 308 U.S. 415, 421, 422, 60 S.Ct. 313, 84 L.Ed. 355; Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 191, 57 S.Ct. 325, 81 L. Ed. 593; United States v. American Rail-

way Express Co., 265 U.S. 425, 435, 44 S. Ct. 560, 68 L.Ed. 1087. On the other hand, the contention that the policy covered the accident seeks only to sustain the judgment for a reason presented at the trial and determined adversely to appellees. The recovery is upon the policy; and it is no more than a change of reason for such recovery, whether it be under the terms of the policy or because of an estoppel to question the applicability of the terms. In such situations the rule is that "a respondent or an appellee may urge any matter appearing in the record in support of a judgment". Le Tulle v. Scofield, 308 U.S. 415, 421, 60 S.Ct. 313, 316, 84 L.Ed. 355. Also, McGoldrick v. Compagnie Generale Transatlantique, 309 U.S. 430, 434, 60 S.Ct. 670, 84 L.Ed. 849; Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 191, 57 S.Ct. 325, 81 L.Ed. 593; United States v. American Ry. Express Co., 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087. Therefore, appellees may, in support of the decree, urge here this ground that the policy covers the accident.

Taking the above contention of appellees and those of appellant, the issues before us are as follows: (1) Does the policy cover this accident; (2) if it does not, is estoppel allowable here; (3) if the policy does not cover and estoppel can be applied, is the finding of estoppel supported by the evidence?[1]

### 1. Coverage of the Policy.

█ This is a matter of construction of the pertinent terms of the policy and application thereof to the fact situation as to the accident.

It is well to state the essential facts as to the accident in order to understand the contentions of the parties as to the meaning of the policy. The business of Roberts was the sale and installation of furniture and fixtures. His place of business was Fort Smith, Arkansas. He sold Clyde

Primm a gas operated refrigerator and installed it in Primm's residence in the town of Ozark, Arkansas. The installation was completed by coupling up the refrigerator to the gas pipes in the house. During the night following the day of such installation, Primm, his wife and children were injured by gas escaping from these refrigerator connections. Shortly afterward, suit was brought for such injuries and recovery resulted.

Appellant contends the policy covered only occurrences upon the business premises of Roberts in Fort Smith and occurrences happening during but not after installation elsewhere. Therefore, since this accident happened at Ozark and after the installation of the refrigerator had been completed, there was no coverage under the policy terms. Appellees contend that the policy covered results from improper installation, including improper inspection to make sure the installation was safe. Since this accident happened after the installation had been completed and the refrigerator as installed turned over for use by Primm, it is clear that there is no liability if the coverage is only for occurrences during the course of installation; while there is liability if the coverage extends to results of completed installation (including inspection).

The policy consists of a printed form of "Manufacturers' or Contractors' Liability Policy" with insertions applicable to this insured. The form included a statement that: "The insurance afforded is only with respect to such and so many of the following Coverages and divisions thereunder as are indicated by specific premium charge or charges." This was followed by a table of coverage which included, separately, bodily and property damage. The pertinent portions of that table, with insertions in this policy, are as follows:

"Limits of Liability

| Coverages | Division | Hazards | Each Person | Each Accident | Aggregate | Advance Premium |
|---|---|---|---|---|---|---|
| A. Bodily Injury Liability | 1. Premises-Operations | | $5,000. | $10,000. | xxxx | $12.50 |
| | 2. Elevators | | $xxxxxx | $xxxxxx | xxxx | $nil |
| | 3. Independent Contractors | | $xxxxxx | $xxxxxx | xxxx | $nil |
| | 4. Products or Completed operations | | $xxxxxx | $xxxxxx | xxxx | $nil |
| | 5. Contractual | | $xxxxxx | $xxxxxx | xxxx | $nil" |

This table is followed by another designed to contain information, separately,

---

[1] Appellant argues the sufficiency of the evidence to support estoppel under its second and third points above as to proof of acts and conduct and as to prejudice.

as to each of the above five "Divisions" in the first table. As to all except Division 1, the inserted notation is "not covered". As to Division 1 there is the following:

of such operations at the place of occurrence thereof and away from premises owned, rented or controlled by the insured."

A concise summation of all of the above provisions of the policy (which are ·those

| Description | Code | Premium Bases | "Rates Coverage A | "Rates Coverage B | PREMIUMS Coverage A | PREMIUMS Coverage B |
|---|---|---|---|---|---|---|
| 1. Premises-Operations. Location of premises by street and number, town and state; and classifications of operations. 113 No. 10th St. Fort Smith, Ark. Furniture and Fixtures Installation In Offices and Stores—NOC —portable metal or wood | 5146 | 8000. | .14 | | 12.50 Min. | Nil |
| Salesmen, Collectors & Messengers— Outside | 2450 | 3000. | .02 | | | |
| Clerical Office Employees NOC | 2450 | 1000. | .02" [2] | | | |

From the above, it is clear that the only coverage was such as would come within the classification "Division 1. Premises—Operations." The pertinent portion of "Definition of Hazards" as to Division 1 is as follows:

"Division 1. Premises—Operations ...... The ownership, control, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto."

Under a heading "Exclusions" is the statement that "This policy does not apply * * * (e) under divisions 1 and 3 of the Definition of Hazards, to: (1) liability with respect to which insurance is or can be afforded under division 4 of the Definition of Hazards;". "Division 4 of the Definition of Hazards" referred to in the just preceding quotation is as follows:

"Division 4. Products or Completed Operations ...... The handling or use of or the existence of any condition in goods or products manufactured, sold, handled, or distributed by the named insured, if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured; and the existence of any condition in premises or property, other than tools, uninstalled equipment and abandoned or unused materials, caused by operations of. the named insured or his independent contractors, if the accident occurs after the completion or abandonment

discussed by the parties as pertinent) is as. follows: the only coverage is under "Division 1. Premises—Operations;" the "operations" here intended are defined as ‹"Furniture & Fixtures Installation in Offices & Stores—NOC—portable metal or wood * * * Outside"; the definition of hazards as to Division 1 includes "all operations * * * necessary or incidental" to use of the described premises; the exclusion from coverage (in Division 4) of "the existence of any condition in premises or property, other than tools, uninstalled equipment and abandoned or unused materials, caused by operations of the named. insured or his independent contractors, if the accident occurs after the completion or abandonment of such operations at the place of occurrence thereof and away from premises owned, rented or controlled by the insured."

We need not determine whether installations in residences,—as distinguished from "Offices & Stores",—is within the coverage. If it should be, the last-quoted provision from the excluded Division 4 clearly excludes this occurrence from coverage because it happened away from the "premises"; resulted from the existence of a "condition in premises or property"; was "caused by operations of the named insured"; "the accident occur[ed] after the completion * * * of such operations at the place of occurrence thereof and away from premises owned, rented or controlled

[2] The letters "NOC" mean "no other classification."

by the insured"; and it was not caused by "tools, uninstalled equipment and abandoned or unused materials."

Appellees argue that Division 4 applies only "to defects in fixtures that are installed and not to any negligence in installing them." The first clause of Division 4 covers defects in fixtures under the situation here. However, the second clause has to do with something else which is the "condition in premises or property * * * caused by operations of the named insured" and the unfortunate condition here was caused by the operation of instalment by this insured.

## 2. Is Estoppel Allowable?

 Appellant contends that estoppel cannot be applied here because (this being an Arkansas contract) the law of that State denies extension of coverage by estoppel to include a coverage expressly excluded in the policy—such being the situation here. Appellant is correct in stating that the estoppel here would operate to extend the coverage to include a coverage expressly excluded in the policy. Therefore, estoppel is not here allowable if the law of Arkansas is as appellant contends.

The law intended is not statutory but is sought to be found in decisions. Appellant concedes that the decision law of Arkansas permits estoppel or waiver where such is applied to prevent *forfeiture* under a policy. The distinction appellant seeks to make is between estoppel or waiver of forfeiture of coverage stated in the policy (thus preserving liability under the policy) and estoppel or waiver having the effect of extending the coverage beyond the clear provisions of the policy—in this instance, to coverage expressly excluded by the policy.

The excellent briefs of the parties cite and discuss many cases from other jurisdictions. Such are not here helpful if the Supreme Court of Arkansas has clearly spoken on the subject. Appellees cite and discuss several Arkansas cases [3] which are purely forfeiture cases. These are not apposite to the contention of appellant. The cases mainly relied upon by appellant are Hartford Fire Ins. Co. v. Smith, 200 Ark. 508, 139 S.W.2d 411, and Miller v. Illinois Bankers Life Ass'n, 138 Ark. 442, 212 S.W.

310, 7 A.L.R. 378; with support from John Hancock Mutual Life Ins. Co. v. Henson, 199 Ark. 987, 136 S.W.2d 684; Mutual Benefit H. & A. Ass'n v. Moore, 196 Ark. 667, 119 S.W.2d 499, and State Farm Mutual Auto Ins. Co. v. Belshe, 195 Ark. 460, 112 S.W.2d 954. Appellees rely upon Western Casualty & Surety Co. v. Independent Ice Co., 190 Ark. 684, 80 S.W.2d 626.

In the Smith case, the policy covered truck shipments and was expressly confined to shipments to named points, of which Joplin was not one. A shipper sued the insurer for damage in a shipment to Joplin. Insurer's agent declined responsibility "until he found out whether the shipment was covered." [200 Ark. 508, 139 S.W.2d 412.] Later, the insurer declined responsibility on the ground of noncoverage. The court stated "There is no question of forfeiture or estoppel in this case * * *." In connection with another contention the court said: "The fact that Vansandt [the insured] undertook to bind appellant by issuing bills of lading to Joplin cannot have such effect, at a time when he held no such policy. The doctrine of waiver and estoppel cannot be asserted to extend coverage under a contract in which it was excluded by specific language. Miller v. Illinois Bankers' Life Ass'n., 138 Ark. 442, 212 S.W. 310, 7 A.L.R. 378; Mutual Ben. Health & Acc. Ass'n v. Moore, 196 Ark. 667, 119 S.W.2d 499; John Hancock Life Ins. Co. v. Henson, Feb. 12, 1940 [199 Ark. 987], 136 S.W.2d 684."

In the Miller case, there was an express exclusion, in a life policy, of liability for death "while in the service in the army or navy of the government in time of war." The principal contention was that there was a waiver of this exclusion because of a statement of the local agent to insured (two years after issuance of the policy and shortly after enlistment of the insured) that he construed this exclusion as confined to death in battle—the death here being from pneumonia while in military camp—and because of acceptance of premiums during such military service of the insured. After stating that the exclusion clause was not one of forfeiture but of coverage, the court discussed the evidence and determined therefrom that there was

[3] Missouri State Life Ins. Co. v. Brooks, 173 Ark. 263, 292 S.W. 102; American Life Ass'n v. Vaden, 164 Ark. 75, 261 S.W. 320; Queen of Arkansas Ins. Co. v. Forlines, 94 Ark. 227, 126 S.W. 719; German Ins. Co. v. Gibson, 53 Ark. 494, 14 S.W. 672.

no waiver because either of the agent's statement or of the acceptance of such premiums. There is no statement that had the facts justified the existence of waiver, yet the coverage could not be extended.

The Henson case had no issue of estoppel or of waiver. The sole matters discussed or determined were concerned with delivery of the policy and with payment of the first premium—both of which were required by the policy before it became effective.

In the Moore case there was no issue of waiver or of estoppel. The issue there was one of construction of a disability policy. The policy provided there should be liability for disability from tuberculosis "only if the disease originates after the policy has been in continuous force for the six (6) preceding months." [196 Ark. 667, 119 S.W.2d 501.] The policy had lapsed after the first three months for lack of premium payment. Several months later it was reinstated. During the interval the court held there was no insurance hence the six continuous months began to run with the date of reinstatement. The court stated: "We have but recently discussed very similar propositions to the one under consideration, making a distinction between insurance in force and which might be defeated because of some exception stated in the policy, and a condition whereby the insurance was never, in fact, in effect because the insured was not covered under the provisions of the policy."

The court cited the Belshe case as illustrative of the first class in the above quotation.

The Belshe case involved no issue of estoppel or of waiver. The sole question was whether the answer of the insurer (to which a demurrer had been sustained) stated a defense. The defense so stated was that the policy expressly excluded liability for injury from a truck if the driver was operating it in violation of "any law or ordinance as to * * * driving license" [195 Ark. 460, 112 S.W.2d 955] and that the driver at the time of the accident had no such license nor had applied for such. The court held a defense sufficiently stated.

A summary of the above five cases relied upon by appellant results as follows. The only case which touches the issue before us is the Smith case. In that case the only statement referring to this issue is the one quoted therefrom above. The quoted statement is in the nature of a dictum or of an added thought unnecessary to decision. The statement is very clear and unequivocal. However, even a dictum in a State decision should be followed by us unless there is positive decision to the contrary. See Texarkana v. Arkansas Louisiana Gas Co., 306 U.S. 188, 199, 620, 59 S.Ct. 448, 83 L.Ed. 598. Also, note expressions in Supreme Court opinions to the effect that "it is the duty of the former [federal courts] in every case to ascertain from all the available data what the state law is and apply it" (West v. American T. & T. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139, 132 A.L.R. 956) and that decisions of intermediate State courts are to be followed by federal courts as to State law "unless it [federal court] is convinced by other persuasive data that the highest court of the state would decide otherwise", West v. American T. & T. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139, 132 A.L.R. 956. Certainly, a clear, unequivocal dictum in an opinion of the highest State court is "available data" and is sufficiently "persuasive data" to convince as to what it "would decide."

The Independent Ice Company case, relied upon by appellees, contains a positive statement to the contrary of the Smith case, as follows: "Moreover, appellant assumed the defense of the Anthony case, thereby admitting that the casualty was within the terms of the policy issued by it and waived all defenses it might have had and cannot be heard to say that the policy did not cover the child's injuries." [190 Ark. 684, 80 S.W.2d 627.]

A study of the issues in the Independent Ice case seems to reveal that the just quoted statement was not the basis of decision of the issue concerning which it was uttered but merely an additional consideration. There was no issue of estoppel or waiver in that case.

The result of a comparison and consideration of the Smith and of the Independent Ice Company cases leads to the conclusions that their opposed statements are of equal gravity; that they are inconsistent with each other; that the last expression of the court must govern us; and that the statement in the Smith case is, therefore, controlling. If this be true, the position of appellant that estoppel and waiver cannot be applied in this case must be accepted; and the judgment reversed and remanded with instructions to set aside the

dismissal of the petition and to enter judgment declaring lack of liability on the part of appellant. Whether appellant may be liable to Roberts in tort or otherwise than on this policy is not involved in this action.